JAMES ARMITAGE v. NANCY D. TOLL ET AL.

*Foreclosure of mortgage—Prior and junior incumbrances—Home stead.*

1. A husband and wife joined in a mortgage of a 100-acre farm, which was divided into two parcels, of 40 and 60 acres each, by a highway, the 40-acre parcel being occupied by them as a homestead, and of the value of $1,500. Some time afterwards the husband executed a *second* mortgage upon the same land, in which his wife refused to join, and in which he selected the 40 acres as his homestead. On foreclosure of the *first* mortgage, the court decreed that the 60 acres should be *first* sold to satisfy the amount due thereon, and only in case of a deficiency should resort be had to the homestead, from which decree the *second* mortgagee appealed, claiming that the contrary order of sale should be adopted.

   Held, that the junior mortgagee had full notice of the homestead interest when he took his mortgage, and that his rights, as also those of his assignee, thereunder, are the same as if the homestead had not been included in such security.

2. A wife has an *equal* right with her husband to protect the homestead rights of herself and family, either at law or in equity.

3. The execution by husband and wife of a mortgage upon their homestead does not operate to release or waive the statutory exemption beyond what is necessary to satisfy the lien thus created.

4. The rule in equity that, on the foreclosure of a mortgage on lands a *portion* of which have been subsequently mortgaged, the portion not so *doubly* incumbered shall be *first* sold, does not apply where the premises covered by the first mortgage, in which the wife joined, include the mortgagor's homestead, the junior mortgage not being signed by her.

5. "The homestead, within the constitutional and statutory limitations, and in cases where the premises occupied by the householder and family exceed those limitations as to value, and are indivisible, the homestead interest, to the amount of fifteen hundred dollars, is absolutely exempt from execution, and is subject to the control and disposition of the debtor and his wife, to the entire exclusion of creditors." *Vermont Sav. Bank v. Elliott*, 53 Mich. 259.

Appeal from Monroe. (Joslin, J.) Argued November 16, 1886. Decided January 20, 1887.

Bill filed to foreclose a mortgage on a homestead and other land, and a second mortgagee of the other land appeals from a decree directing the sale of the homestead *after* her security is exhausted. Affirmed. The facts are stated in the opinion.

*Ira R. Grosvenor,* for complainant.

[Cites cases referred to in opinion.—REPORTER.]

*I. G. Humphrey* (*G. Morris,* of counsel), for defendant Nancy D. Toll.

In support of general rule as to marshaling securities, see *Trowbridge v. Harleston,* Walk. Ch. 185; *Mason v. Payne,* Id. 459; *James v. Brown,* 11 Mich. 25; *Cooper v. Bigly,* 13 Id. 463; *Ireland v. Woolman,* 15 Id. 253; *Sibley v. Baker,* 23 Id. 312; *Gilbert v. Haire,* 43 Id. 283.

The fact that the mortgage covers a homestead and other property does not give the debtor the right to have the latter property first sold to satisfy the mortgage: 2 Jones, Mort. § 1632; *Searle v. Chapman,* 121 Mass. 19; *White v. Polleys,* 20 Wis. 503; *Chapman v. Lester,* 12 Kan. 592.

*Talcott E. Wing,* for defendant Louisa Davenport.

SHERWOOD, J. James Davenport, on the twelfth day of December, 1863, owned 100 acres of land lying in Monroe county, and upon which he and his wife, Louisa, had lived since 1855.

The road ran east and west through the farm, leaving about 40 acres on one side, upon which the buildings were erected, and which constituted his homestead, and 60 acres on the other. At that date James and his wife gave a mortgage upon the entire 100 acres, upon which it is claimed there was due, April 21, 1886, $1,080.58. This mortgage was duly assigned to James Armitage, the complainant in this case.

On the ninth day of February, 1870, the defendant James Davenport executed a second mortgage to defendant Alfred Toll, upon the same property, which his wife, Louisa, did not

sign, and upon which there was due, as claimed, $1,621.31, on the sixth day of March, 1885. Immediately after the description in this mortgage follows this clause:

"And the said James Davenport, by these presents, selects and chooses the north 40 acres of said above-described 100 acres as his homestead, under the statute in such case made and provided."

This mortgage was assigned by Alfred Toll to defendant Nancy D. Toll. Two other mortgages given subsequent to the Toll mortgage—one signed by James Davenport and his wife, and the other, by James alone—are shown by the record to be upon the same property; but, in the view I take of the case, it will be unnecessary to consider those further.

The bill in the case is the usual foreclosure bill, and is filed to foreclose the first mortgage. Mrs. Toll appears and answers, and asks that the complainant shall be decreed to sell the homestead to satisfy his mortgage before resorting to the parcel of 60 acres. Defendant Louisa Davenport appears and answers, and prays that her homestead be last sold to satisfy complainant's mortgage sought to be foreclosed in this suit. Charles Toll appeared and disclaimed. James Davenport allowed the bill to be taken as confessed against him.

Proofs were taken before Judge Joslin, in open court, who, after hearing the testimony in the case, entered a decree therein that the 60 acres must be first sold to satisfy the complainant's mortgage, and only in case of deficiency can resort be had to the homestead.

Defendant Nancy D. Toll alone appeals.

The question raised in this case is, in foreclosing a mortgage upon several parcels of land, including a homestead, can that only be sold to pay the deficiency remaining after a sale of all the other property mortgaged?

It is as much the right of the wife, either at law or in equity, to protect the homestead rights of herself and family as it is that of the husband. *Dye v. Mann,* 10 Mich. 291;

*McKee v. Wilcox,* 11 Id. 358; *Sherrid v. Southwick,* 43 Id. 515.

The execution of a mortgage upon a homestead by husband and wife does not operate to release the homestead right, or waive it, only to the extent it may become necessary to satisfy the mortgage. I do not think it can well be claimed that Mrs. Davenport, when she signed the mortgage, contracted with the mortgagee that her homestead only should be made liable for the mortgage debt; and I have no doubt, as between them, equity would require, on a sale of the mortgaged property, that the 60 acres should be sold first, and that the homestead should only be sold for the deficiency.

I am not able to see how Mrs. Toll's mortgage can give her any right to have the liability of the homestead increased. Certainly she has no contract to that effect with Mrs. Davenport, and no interest whatever in the homestead. Neither does the law create any such contract for her with Mrs. Davenport. The law which gives the homestead right is to be liberally construed and favorably regarded. Courts of equity look with favor upon the benefits sought to be accomplished by this statute.

The welfare of the family, the community, and the State are all alike interested in the maintenance of the family and the home.

I have failed to discover any reason why the law should create a new contract between Mrs. Davenport and the mortgagee, or make a contract, where one never existed, between Mrs. Davenport and Mrs. Toll. It will not do to allow any fiction or theory to subvert and destroy rights secured by both statute and constitutional provisions. But I know of no fiction or theory which will allow this to be done.

It has been expressly decided in this Court that—

"The law excludes the homestead from all remedies of creditors in all courts, and the power of the creditor to take it against the will of the owner is absolutely subverted. There is no question left as to whether there is or should be

a remedy somewhere to subject the homestead. The law has closed the door against all discussion about it." *Smith v. Rumsey,* 33 Mich. 192.

The rule in equity that where a prior mortgagee holds a lien upon lands, and a subsequent mortgagee holds a mortgage upon a portion of the same lands, on foreclosure by the prior mortgagee he should first offer.for sale that part not covered by the junior mortgage, has no application to the present case, for the reason that the land covered by the first and not by the second mortgage is the homestead of the mortgagors, which is not subject to the rights of or remedies given to creditors, only so far as the wife has seen fit to convey. The rule does not apply to cases where the lands omitted in the junior mortgage "are excluded from all remedies of creditors in all courts."

If we were to adopt the rule contended for by counsel for Mrs. Toll, the homestead right would be of little value, indeed, to the wife and family of a dishonest or unfortunate husband. A wife, to gratify the requirements of a mortgagee, might be quite willing to allow her homestead to be placed under a mortgage, with other lands, worth four or five times the amount for which the mortgage was given, while she would utterly refuse so to do if the whole amount could be thrown upon her homestead, against her consent, by reason of some contract her husband could afterwards make without consulting her. The practical operation of such a rule as is contended for is very well illustrated by the following extract from the brief of defendant's counsel.[1]

" Had, James and Louisa joined in a mortgage of the entire 100 acres for say $1,500, the value of the homestead, defendant James might the next day, without the consent of his wife, and against her protest, mortgage the same property for as near the full value of the remaining 60 acres as he could obtain. The second mortgagee could force the first to sell the homestead for his claim, while the second mortgagee

---

[1]Talcott E. Wing, counsel for Mrs. Davenport.

sold the remainder; and the wife, who had refused consent and protested against the second mortgage, would, with her family, be driven from her home."

Thus would the homestead statute, with all its intended benefits, be clearly subverted.

By the constitutional provision it was never intended that the homestead of the family should be at the mercy of every creditor of a husband who could procure his wife's signature to a mortgage which should cover the homestead with other property, in any such way.

In signing the first mortgage Mrs. Davenport waived nothing except as to that claim alone. *Vermont Sav. Bank v. Elliott*, 53 Mich. 256.[1]

The junior mortgagee had full notice of the homestead interest at the time he took his mortgage, and his rights, and those of his assignee, are the same as they would have been had the homestead not been included in the first mortgage, and no other or greater.

I think the decree at the circuit was right, and should be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J. (*dissenting*). I think the decree below was erroneous. It is the well-settled law of this State, and always has been, that, where a prior mortgagee's security covers more land than the mortgages executed subsequently, the prior incumbrancer must first resort to the land which is not subsequently incumbered, in order that the latter mortgagees may, as far as possible, get their pay after he is paid. The subsequent mortgagee is by any other rule cut off from his security for the benefit of his debtor.

It is not disputed by any one that, if no part of the prop-

---

[1] In this case it is held that a surplus of $1,500 arising from the sale of a mortgaged homestead incapable of division, and exceeding in value $1,500, is exempt from execution for the husband's debts, and should be applied on a second mortgage given after the levy of such execution.

erty covered by the first mortgage in the present case had been occupied as a homestead, the rule would apply. I cannot see how that should make any difference. The property belonged to the husband, and except for the homestead law he could do what he pleased with it. The only effect of the constitutional and statutory provisions is to require the wife's concurrence in a deed or mortgage to make it binding. The joint act of husband and wife can always end the exemption. A change of residence will extinguish it.

When the wife joins in a deed or mortgage, the instrument has the same validity as any other similar transfer. The constitutional provision contains no qualification or limitation. It is made for the wife's benefit, and she can waive it if she chooses in the way designated. When she does so waive it, I can see no reason for holding that the deed or mortgage does not become subject to all the incidents of such a security, and one of them is the liability of having the sale on foreclosure marshaled in favor of subsequent incumbrancers. It is not, I think, a proper judicial function to make new rules of law, on any theory, of a legislative intent that has never been expressed, and that would revolutionize the law of mortgages. Undoubtedly a wife, in signing a mortgage, might by its terms qualify what would otherwise be its effect; but to hold that a mortgage which the law makes valid should, in the absence of any such condition, be put on a different footing from other mortgages, is, in my judgment, a stretch of judicial authority over the rights and liabilities of contracting parties that is not authorized.