## · WOLCOTT *v.* TWEDDLE.

1. APPEAL—DECREE—WRONG REASON FOR RIGHT RESULT.

   A decree which is as favorable to appellant as he had a right to ask will not be reversed because a wrong reason was given by the court for the conclusion reached.

2. FRAUDULENT CONVEYANCES—MORTGAGES—REDEMPTION—SUBRO-GATION—HOMESTEAD.

   Where a conveyance of mortgaged lands is set aside, except as to a homestead interest, at the suit of an execution creditor, the grantee, on redeeming from the mortgage, is entitled, in the absence of special circumstances, to be subrogated to the full extent of the mortgage lien, as against a purchaser at the execution sale. *Rhead* v. *Hounson,* 46 Mich. 243, disapproved.

3. SAME—APPEAL—RIGHT TO COMPLAIN. ·

   However, a decree requiring the homestead interest to bear its proportion of the mortgage debt was not disturbed, where the rents and profits of the premises, together with the proceeds of an insurance policy thereon, received by the grantee, more than equaled the amount deducted by the court from his claim under the mortgage.

Appeal from Kent; Perkins, J. Submitted April 9, 1903. (Docket No. 25.) Decided June 15, 1903.

Bill by Laurens W. Wolcott and Cyrus E. Perkins, co-partners as Wolcott & Perkins, against John J. Tweddle, to foreclose certain liens. From a decree for complainants granting insufficient relief, they appeal. Affirmed.

*Taggart, Denison & Wilson,* for complainants.

*John J. Tweddle* ( *E. A. Maher,* of counsel ), *in pro. per.*

CARPENTER, J. Prior to November 5, 1897, Bernard Fingleton owned a farm in Ada township, Kent county, comprising about 120 acres, and including his homestead. On that day he delivered a deed of the premises to Jennie

Flood. He was then owing an indebtedness, which on October 17, 1899, was reduced to a judgment against him, with others, in favor of Harry D. Jewell, judge of probate, for the use and benefit, etc., for the amount of $933.05 damages and $40.90 costs. Upon this judgment, execution was levied upon the entire premises so conveyed to Jennie Flood. The execution creditor, the judge of probate, thereafter filed a bill in aid of execution against Bernard Fingleton and Jennie Flood. In the case so commenced, a final decree was entered October 22, 1900, by which it was decreed that the conveyance from Bernard Fingleton to Jennie Flood should be set aside for invalidity against the complainant, as a creditor of Fingleton, except as to the homestead interest of Fingleton in the premises conveyed by the deed to Jennie Flood, which homstead interest was by the decree declared to be exempt from the operation of the decree. On the 29th day of September, 1900, while the bill in aid of execution was pending, Jennie Flood conveyed the entire premises, by a quitclaim deed, to the complainants in this case, Laurens W. Wolcott and Cyrus E. Perkins, composing the firm of Wolcott & Perkins, who had been acting to some extent as her solicitors in the litigation.

Bernard Fingleton, before delivering the deed to Jennie Flood, executed a mortgage upon the entire premises to Frances Eby for $2,500. The good faith and validity of this mortgage were never questioned, and it has always been conceded to have been, in the hands of the mortgagee, a lien upon the entire premises, paramount to the claims and rights of all the other parties. Foreclosure of this mortgage was commenced, and a final foreclosure decree was entered December 10, 1900. A foreclosure sale was made by the commissioner on March 2, 1901, at which time the entire premises were sold to L. Frank McKnight for the sum of $2,440.87; the sum received upon such sale being $1 in excess of the total amount due at the date of the sale, under the decree, for principal, interest, and costs. The time for redemption from this sale expired

September 2, 1901. On August 29, 1901, Wolcott & Perkins, being the owners of the equity of redemption in the premises subject to the execution levy, redeemed from the mortgage foreclosure sale, paying to the purchaser, through the register of deeds, the full amount, with interest, being $2,512.87.

On January 14, 1902, the entire premises were exposed for sale under the execution levy, as aided by the chancery decree. At this sale it was agreed between the execution creditor and Wolcott & Perkins that, instead of setting off a separate homestead, the entire premises might be sold together, subject to the $1,500 homestead lien. The sale was made accordingly. This agreement was embodied in the sheriff's certificate of sale, and John J. Tweddle, the defendant, became the purchaser, paying therefor two days later $1,205. The total value of the premises at this time was $4,000. At the execution sale these complainants, Wolcott & Perkins, gave notice that they claimed not only the $1,500 homestead lien upon the premises, but also a lien by subrogation for the entire amount of the Eby foreclosure sale, which they had been compelled to redeem from and pay in order to protect their homestead interest, making their total lien upon and claim against the premises $4,069, subject to which, they insisted, any purchaser at the sale would take the property. Later in the same day, and before Mr. Tweddle, the purchaser, had paid anything, they embodied these claims and demands in a formal written notice duly served upon him.

About January 1, 1898, a barn standing upon the homestead part of the premises, of the value of $1,072, was destroyed by fire, for which Mrs. Flood obtained that amount upon insurance. She paid $467.70 of this upon the mortgage debt, so that she retained a net balance from the insurance money of $604.30; and this, with interest at 5 per cent. to the time of the entering of the decree in the court below, would amount to upwards of $745. No account was taken of this matter in making the decree.

Mr. Tweddle, the purchaser, declining to make pay-

ment of this amount, the complainants thereupon, on January 16, 1902, filed this bill of complaint. They set up the facts hereinbefore recited, and alleged that, by virtue of their redemption from the Eby foreclosure sale, they became subrogated to the position of the mortgagee, and entitled to enforce the entire mortgage claim against the entire premises. They alleged, also, that the defendant purchased at the execution sale with full knowledge of their claim, and took the premises subject both to the mortgage subrogation claim and to the homestead claim. They asked for a decree declaring, enforcing, and foreclosing these two liens. The court below held that the complainants were entitled to subrogation on account of their redemption from the Eby foreclosure, but that the homestead interest, being subject to this mortgage, and being three-eighths of the entire value of the mortgaged property, should bear three-eighths of the mortgage burden. He therefore charged the premises with a lien in favor of complainants for the $1,500 homestead interest, and $1,570 of the portion paid for the redemption of this mortgage, but denied the complainants' claim for a lien for the balance of the redemption money, viz., about $941. Complainants appeal.

The court below reached the conclusion stated upon the authority of the case of *Rhead* v. *Hounson*, 46 Mich. 243 (9 N. W. 267), which case apparently supported the holding of the circuit judge. In that case the owner of property consisting of a homestead and other lands, subject to a mortgage covering the whole, made a conveyance fraudulent as to creditors. This conveyance was attacked, and the court held not only that the conveyance was void as to the excess over the homestead interest, but that the homestead interest should bear its proportion of the incumbrance in an adjustment of equities between a purchaser at an execution sale and the fraudulent grantee. Were the question involved in that case the only one to be considered in the present case, we should be compelled to hold that that case is not in line with numerous

decisions of this court before and since its promulgation, and should not hesitate to overrule it. It has been frequently decided that, in foreclosure proceedings covering a homestead and other lands, the primary fund for the payment of the mortgage is the land other than the homestead. It has also frequently been decided that by a conveyance of premises in which a homestead interest exists in the grantor, and an incumbrance covering that and other property, in which the aggregate of the incumbrance and the homestead interest exceeds the total value of the property, no fraud can be said to be perpetrated as against existing creditors. The cases of *Armitage* v. *Toll*, 64 Mich. 412 (31 N. W. 408), and *Kozminski* v. *Kuzniak*, 118 Mich. 621 (77 N. W. 242), are, in principle, inconsistent with the holding of *Rhead* v. *Hounson*.

It remains to be considered whether the complainants in this case are entitled to any greater lien than the court decreed. If the decree of the court below was as favorable to complainants as they had a right to ask, it will not be reversed because a wrong reason was given for the conclusion reached. By the decree in Jewell against Fingleton and Flood, it was determined that the deed from Fingleton to Flood should be set aside, vacated, and declared null and void and of no effect whatever as against the complainant in that case, except as to the homestead interest of Bernard Fingleton in the premises, which was declared to be exempt from the operation of the decree. The homestead interest referred to in that decree was, of course, the homestead interest possessed at the time the conveyance was made. The complainants stand in the same relation to this property as would Mrs. Flood had she not conveyed the land. It appears by her testimony that she bought subject to this mortgage. In one proceeding she stated that she had assumed to pay the mortgage. In her testimony used in this case she stated that she was to pay the interest on the mortgage, and the fair import of her testimony, as qualified by testimony given in this case,

is that she did assume to pay the mortgage, provided she had the property. As we have seen, after the conveyance to her there came into her hands $1,072 insurance money, which was received in substitution for the *res* to that extent. Of this she applied but a portion in payment on the mortgage, leaving a balance in her hands of $604.30, derived from this conveyance, and which should, in equity, have been applied, as of the date of its receipt, in extinguishment of the mortgage lien. If interest on this be computed to the date of complainants' redemption,—say, 3½ years,—the amount is $710.50. If Mrs. Flood's testimony be accepted that she was to pay the interest on the mortgage, it must be assumed that this arrangement and understanding was made without reference to the insurance money, as it was, of course, not known at the time that this would come into her hands. But, apart from any such arrangement, it was fairly equitable that she should pay this interest money. From the time of the conveyance to her, in 1897, she and her grantees have had the use of the entire premises. It would be grossly inequitable to permit the grantee in this fraudulent conveyance to shelter herself behind this homestead claim, reduce to her possession all that has substance in the remainder of the estate, and still assert that in equity she is entitled to subrogation for the discharge of this lien upon the property, granted fraudulently and with the purpose of defeating creditors.

At the time of the conveyance, the property, in its then condition, was worth $5,000, with the buildings intact. It was subject to a mortgage of $2,500 and a homestead right of $1,500, leaving an interest of at least $1,000 which creditors had the right to reach. The possession acquired under this conveyance, valid only as to the homestead interest, has enabled the grantee to receive all the rents and profits from the day of her deed, November 5, 1897, until August 29, 1901, without further investment, and to obtain the insurance money above referred to. The property has in the meantime, by reason of the destruction of

the barn, from which the insurance was realized, been reduced in value to $4,000. The right of the creditors to pursue the property has, according to complainants' contention, vanished, as the mortgage and the homestead interest, if both are given full priority, fully equal the value of the property. This is not equity. The doctrine of subrogation is administered upon equitable principles. If Mrs. Flood had applied at the time of its receipt the proceeds of the insurance on this barn, and was charged with the value of the rental of this land over and above the homestead interest, it is unquestionable that the amount which she would be entitled to assert as a claim to subrogation would be less than that awarded to her by the court below. While the evidence is not very clear as to the rental value of the land, it may fairly be assumed that it bore some relation to the value of the property; and, upon any basis which the record affords, we think it appears that the insurance money, added to the rentals with which complainants and their grantor should be charged, exceeds the amount which they assert as an added claim against the land.

The decree was sufficiently favorable to the complainants, and will be affirmed, with costs of this court to appellee.

The other Justices concurred.