NANCY D. TOLL v. JAMES DAVENPORT ET AL.

[See 64 Mich. 412.]

*Mortgage—Bill for reformation—Good-faith purchaser.*

A mortgage cannot be reformed so as to include land which has passed, since its execution, into the hands of a *bona fide* purchaser for value without notice.

Appeal from Monroe.  (Kinne, J.)  Argued February 8, 1889.  Decided April 12, 1889.

Foreclosure case.  Complainant appeals.  Decree dismissing bill affirmed.  The facts are stated in the opinion.

*Gouv. Morris,* for complainant.
*Grosvenor, Bragdon & Grosvenor,* for defendants.

LONG, J.  The bill in this cause was filed April 7, 1887, to foreclose a mortgage made February 9, 1870, by James Davenport to Alfred Toll, and assigned to complainant, and to correct the description of the premises mentioned in the mortgage.  After the cause was at

issue, and James Davenport had been examined as a witness, he died, and the complainant dismissed the bill as to him; he having parted with his interest in the land in controversy before his death, and the bill not having been revived against his heirs. On the hearing in the court below the court dismissed the bill, with costs to the defendants. Complainant appeals.

The premises are described in the mortgage sought to be foreclosed as follows:

"All that certain piece of land situate in the township of Raisinville, Monroe county, Michigan, and being a part of old claims Nos. 335 and 459, and bounded and described as follows, to wit: On the north by town line; east by lands of Nelson Ambrose; south by lands of Lawrence Mack and Marcella Richards; on the west by lands of Cornelius Shirk, and fractional section three (3), in town six (6) south, range eight (8) east,—containing one hundred acres, more or less."

The following appears after the description in the mortgage:

"And the said James Davenport by these presents selects and chooses the north forty acres of said above-described one hundred acres as his homestead under the statute in such case made and provided; to have and to hold the above bargained premises unto the said party of the second part, his heirs and assigns, forever."

At the time of the execution of this mortgage James Davenport was a married man. The defendant Louisa Davenport is his wife. This mortgage was given for the sum of $819, payable in three years, with interest annually at 7 per cent. Several other mortgages have been given upon these lands, or some portion of them. These mortgages become important in the consideration of the case. All these mortgagees hold their rights, however, under James Davenport, deceased; some of them being signed by his wife, Louisa. The first mortgage was given by James and Louisa Davenport to Charles G.

Johnson in December, 1863, covering this 100 acres of land. Johnson assigned this mortgage to defendant James Armitage. Armitage foreclosed it, and a sale was made thereunder, March 16, 1887. The south 60 acres of the mortgaged premises were sold and bid in by Charles Toll for the complainant in this case, who was made a party defendant in the foreclosure proceedings. This mortgage covered the homestead 40, and about 60 acres lying south of what is called the "Blue Bush Road;" the tract south of this road being the one sold.

The second mortgage was given by James and John Davenport to Charles H. Colgrove, April 17, 1866, includ. ing this tract of land with other lands. The northern boundary of this tract in this mortgage was the town line between Raisinville and Exeter. This mortgage was assigned to one Alfred Toll, and in 1870 was discharged by Charles Toll, his agent, and the mortgage in controversy given by James Davenport to Alfred Toll, and in this mortgage in controversy the northern boundary of the lands described is the town line.

In April, 1871, James and Louisa Davenport mortgaged to James Armitage. This mortgage covers the homestead, and also the 60 acres south of the Blue Bush road, and the premises are described as bounded on the north by the town line.

On April 17, 1878, James Davenport mortgaged to James Armitage the same description, and also the three acres of land in the town of Exeter, being the same parcel of land that is now sought to be made subject to the lien of the mortgage now in controversy; the description of the northern boundary of the premises in this mort-gage being, "north by the United States-surveyed lands." The following is a plat of the premises, showing the United States surveyed lands, and the township line between Raisinville and Exeter:

TOLL v. DAVENPORT.

TOWN OF EXETER.

N.

TOWN OF
RAISINVILLE.

HIGHWAY.

TOWN LINE AND

Called 40 ac.

BLUE

No. 459.

Davenport farm
100 ac.

Ambrose's land.
80 acres.

SANDY

James

E.

CLAIM No.

CLAIM
No. 385.

60
acres.

Nelson

CREEK.

W.

Fractional Sec. 3, T. 6 N. 8 E.

BUSH ROAD.

L. Mack's land.

M. Richards' land.

S.

* 3 acres in controversy.

The allegation in the bill touching the three acres now sought to be incorporated in the mortgage is—

"That an error was made in drawing said mortgage in relation to the northerly boundary of the land intended to be conveyed and mortgaged, and intended by the parties thereto to be covered by said mortgage; that the intention of said parties was to convey and mortgage the homestead farm of said James Davenport, supposed to consist of one hundred acres, and that said one hundred acres was all in the town of Raisinville, and bounded north by the south line of Exeter, whereas, in truth and in fact, a part of said one hundred acres, which is upon private claim No. 459, extends across and beyond said town line, so as to include in said one hundred acres about three acres of land in the town of Exeter, which three acres is a part of the homestead farm of said Davenport, and was occupied and held out as his homestead farm by him at the time said mortgage was executed by him. Said Alfred Toll, not then knowing where said town line was, there then being no mark to indicate where said line really was, and believing the statements of said Davenport that his land was in Raisinville, was deceived into accepting said mortgage as it was made, then believing it to be correct, thereby cutting off said land in Exeter."

James and Louisa Davenport answered jointly the bill of complaint; and deny any mistake in the mortgage, and say that it was not intended by the parties to mortgage any lands in the town of Exeter, and that all the land that was intended by the parties to be made subject to the mortgage lien was that part lying south of the Blue Bush road, and that no part of the lands of James Davenport lying north of the Blue Bush road was intended to be embraced in the mortgage so given. Some claim is made in the answer of James and Louisa Davenport that this mortgage was procured by fraud, but that is not insisted upon here, and will not be noticed further. The answer further alleges that on March 19, 1887, defendant Armitage having a mortgage upon the homestead farm

of Davenport and wife lying north of said Blue Bush road for the sum of $2,080, and they also being indebted to said Armitage in the further sum of $812 upon another note, in consideration of the sum of $2,912, and being poor and unable to pay the same, having only the 40 acres as their homestead, and said lands being worth but $1,500, they sold and conveyed their homestead farm and lands to said James Armitage for said sum of $1,500, and that Armitage sold and conveyed the same to defendant Jerome Davenport for the price of $1,500, which was all said property was worth, and that Jerome Davenport is now in possession of the same.

James Armitage filed a separate answer to the bill, and claims that the mortgage of complainant never was intended to cover, and does not cover, any lands lying north of the Blue Bush road, or the three acres in the town of Exeter; that he purchased all said lands on March 19, 1887, of the defendants James and Louisa Davenport, for the consideration of $1,500, and that that sum is all said lands are worth; that said James and Louisa Davenport have lived upon and occupied said lands continuously for more than 20 years; that James and Louisa Davenport are husband and wife, and that Louisa Davenport never signed said mortgage, and that by reason thereof said mortgage never had any force as a lien upon any portion of said 40 acres so occupied as a homestead, which includes the three acres so situate in the town of Exeter; that he and his wife conveyed the said lands to Jerome Davenport for the consideration of $1,500 paid, and that Jerome Davenport had no notice of any claim made by complainant under her said mortgage to have the said three acres included therein.

Jerome Davenport also answered the bill, and claims to be a *bona fide* purchaser of the premises, and alleges that the complainant's mortgage was never intended to be a

lien upon the lands lying north of the Blue Bush road; that he paid the sum of $1,500 for the land, including the three acres in Exeter, which is included in the 40-acre homestead; and that he never knew or heard of any claim made that the three acres in Exeter was subject to the lien of complainant's mortgage until the time of the filing of the bill in this cause. He further alleges that even if any mistake did occur in making the mortgage in 1870, yet, complainant, after resting upon her rights for more than 17 years, cannot now set up such a claim against a purchaser in good faith, and without a notice of such claim.

Testimony was given by the parties and their witnesses tending to support their respective theories.

There is no dispute but what there was remaining unpaid upon complainant's mortgage at the time of the hearing in the court below for principal and interest the sum of $1,571.57. The complainant seeks to make this a lien upon the homestead 40 acres, including the 3 acres in the town of Exeter.

This mortgage came before this Court for consideration in the case of *Armitage v. Toll*, 64 Mich. 412 (31 N. W. Rep. 408). In that case a bill was filed by Armitage, one of the present defendants, to foreclose the mortgage given by James and Louisa Davenport on December 12, 1863, upon the whole 100 acres, to Charles G. Johnson, and which mortgage was assigned to Armitage, and upon which there was claimed to be due, on April 21, 1886, the time of filing the bill, the sum of $1,080.58. James Davenport, Louisa Davenport, Nancy D. Toll, the present complainant, and Charles Toll, an execution creditor, were made parties defendant. Mrs. Nancy D. Toll appeared in that case, and answered, and asked that the complainant in that bill, James Armitage, should be decreed to sell the homestead to satisfy his mortgage

before resorting to the 60 acres. Louisa Davenport appeared and answered, and prayed that her homestead be last sold to satisfy the complainant's mortgage. The circuit court decreed that the 60 acres be first sold. From this decree Nancy D. Toll alone appealed. This Court affirmed the decree of the court below, and ordered the 60 acres to be first sold before resorting to the homestead 40. Subsequently a sale of this 60 acres was made, and the property purchased in by the agent of Mrs. Toll. This sale swept the entire property from under the mortgage now in controversy, except that part of it called the homestead 40, including the 3 acres in the town of Exeter, if even this was ever included within the mortgage, or intended to be included.

Judge Kinne, who heard the case in the court below, found that the mortgagor intended to embrace in the mortgage his entire farm, including the 3 acres north of the town line, but that he selected in the mortgage the north 40 acres as his homestead, and excepted it from the operation of the conveyance, and that while it is in some doubt whether the 40 acres is worth fully or a trifle more than the $1,500, yet as the parties were content to treat it as a homestead exemption, and to except it from the terms of the mortgage, and not having raised the question then, that the mortgagee and his assigns are now estopped from questioning its value, and upon this ground dismissed complainant's bill.

The complainant now contends that while it is not intended to interfere with any legitimate homestead right, yet, whatever there may be remaining unsold of the 100 acres of land mortgaged in excess of the statutory homestead, she seeks to apply in payment of her mortgage; that, without subjecting the 3 acres in Exeter to the lien of the mortgage, this land lying north of the 60 acres sold under the former decree is of greater value than the $1,500,

which is exempt as a homestead, and that, if the other parcel lying in Exeter is brought in under the mortgage, it not only exceeds the homestead value, but also exceeds 40 acres of land; that the two parcels together amount to 41.50 acres, and are worth fully $2,000, and complainant asks to have this homestead, as claimed, appraised and admeasured in the way provided by law; that the decree of the court below has deprived her of this right.

We have no doubt it was the intention of the mortgagor to include the whole 100 acres in the mortgage. It is evident that the parties at that time did not take into consideration the distinction now made between the town line and the line of the United States surveyed lands. It does not appear that at the time this mortgage was given, in 1870, any highway existed, or at least that any had been opened for travel, and there was nothing in the case calling attention to the fact that the town line was not the north line of the surveyed lands under these French claims or United States surveyed lands. The mortgagor had the right to make the selection of a homestead, and he did select in the mortgage the 40 acres upon which his buildings were situate, and where his wife and the family resided. This 40 acres was exempt from the operation of the mortgage, unless it exceeded $1,500 in value, as the mortgagor was a married man, and the mortgage was not signed by the wife. From the testimony in the case we are satisfied that, excluding the piece of land lying in the town of Exeter, the land is worth less than the $1,500 homestead exemption, so that, unless this piece of land can be reformed into the mortgage, the complainant could have no protection to her mortgage by a decree granting her the right to proceed to a sale of this parcel of land as provided by the statute in case of homesteads. This statute (How. Stat. § 7728) provides:

"Whenever the homestead of any debtor in any such case shall exceed in value the amount of fifteen hundred dollars, the debtor shall not for that reason lose the benefit intended to be secured to him or her by said chapter and act; but in all such cases when, in the opinions of the creditors or officer holding an execution or decree as aforesaid against such householder, the premises claimed by him as exempt are worth more than fifteen hundred dollars, such officer shall summon six persons qualified to act as jurors; who shall upon oath to be administered to them by said officer appraise the said premises, and in case the value thereof shall be more than fifteen hundred dollars, and cannot be divided, they shall make and sign an appraisal of its value, and deliver the same to the officer, who shall deliver a copy thereof to the debtor, or to some of his family of suitable age to understand the nature thereof, with a notice thereto attached that unless the said debtor shall pay to said officer the surplus over and above the fifteen hundred dollars, or the amount due on said execution or decree within sixty days thereafter, that such premises will be sold."

If it appeared to this Court that the amount of land lying between the Blue Bush road and the town line was worth more than the $1,500, a decree would be entered here ordering a sale of that parcel, after having admeasured the homestead right as provided by the section of the statute above quoted, as the value of the homestead can in no case exceed $1,500, and the mortgage in controversy is the first lien upon that part of the premises, the prior mortgage having been satisfied out of the sale of the 60 acres. The parties, having purchased this piece of land subsequent to the giving of the mortgage, must be deemed to have taken it subject to all the right which the mortgagee might claim by the provisions of this statute. But, as already stated, we are satisfied from the testimony in the case that this land, exclusive of the three acres, is not of sufficient value to warrant such a proceeding. We do not see how it can be said that under the proofs taken in the cause the

three acres can be reformed into the mortgage, on account of the rights of others that have since intervened. This mortgage was given on February 9, 1870, and this bill filed to reform it on April 7, 1887. More than seventeen years had elapsed before any steps were taken to reform into it the three acres in Exeter, which it is evident the parties intended to include, but failed to describe in the mortgage. It appears that on April 17, 1878, eight years after the mortgage in controversy was given, and some nine years before this bill was filed, James Davenport made and executed a mortgage to James Armitage upon the whole hundred acres, and no claim is made but what this mortgage covered the three acres of land lying in the town of Exeter. No evidence is given showing that James Armitage took or was to take his mortgage subject to any claim of complainant or her assignors in the mortgage in controversy, so far as this three acres of land is concerned.

It is very evident that this three acres lying in the town of Exeter was supposed to be covered by the liens of all these mortgages until the time of the foreclosure by Armitage of the mortgage given to Charles G. Johnson. In that controversy the fact became apparent that the northern boundary of the United States surveyed lands was not the town line between Exeter and Raisinville, but that three acres of this one hundred acres was in the town of Exeter, yet the complainant in this case made no claim for a reformation of her mortgage after that case was heard until April 7, 1887. In the mean time, before any such claim was made, James Davenport and wife had conveyed this three acres with other lands to James Armitage, for the consideration of $1,500, and James Armitage and wife had conveyed the same to Jerome Davenport on March 19, 1887, for the consideration of $1,500. The proofs do not show that Jerome

Davenport had any notice of the claim of complainant before the purchase. He has purchased for a valuable consideration, without notice. It is true, complainant makes a claim that the fact that the three acres was not included in the description of lands in her mortgage was not known to her for many years. The fact did not come to her notice, as she claims, until January 20, 1887, when the case of *Armitage v. Toll* was disposed of in this Court. But the fact appears, nevertheless, that on March 19, 1887, the defendant Jerome Davenport took a conveyance of this three acres, and before this bill was filed, and there is no showing in this case that he had any notice whatever that complainant was asserting any rights in the three acres. There was nothing in the whole transaction even to put him upon inquiry as to the right of the complainant in this small parcel of land. It is too well settled to need the citation of authority that no reformation of a mortgage can be made affecting the property after it has gone into the hands of a *bona fide* purchaser for value without notice. That seems to be the case here, and for that reason we must hold that the three acres cannot be reformed into this mortgage.

In this view of the case it must follow that the decree of the court below must be affirmed, with costs.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. SHERWOOD, C. J., did not sit.