ROBERTSON *v.* SMITH.

1. REFORMATION—MISTAKE—DEEDS—EQUITY—DESCRIPTION.

Complainant filed her bill for reformation of deeds conveying to the defendants a parcel of land and to correct the conveyance so as to exclude a narrow strip in the rear of the property, claimed by her, and she averred that a mutual mistake had occurred whereby the point of commencement in the description had been wrongly determined in the deed from her grantor and in defendant's title deeds and prior instruments. By their answer defendants denied the claim of mistake, and set up the contention that part of a barn owned by one of the grantors had for a long time occupied a piece of the land claimed by complainant, also that portions of the property in controversy had been used by the owner of the barn adversely, to place manure, etc. The defendants in possession claimed to be purchasers in good faith without notice though they were advised of the location of the barn. *Held*, that the evidence to prove a mutual mistake was not sufficiently convincing and that as to innocent purchasers of the parcel complainant could not reform her deed.

2. SAME—INNOCENT PURCHASER.

No reformation can be granted in equity after the land has passed into the hands of a *bona fide* purchaser for value without notice, whose rights would be prejudiced by the correction of the alleged error.

3. SAME—NOTICE—ADVERSE OCCUPANCY.

The occupancy by the barn and owner thereof was notice of an adverse claim only so far as it extended.

Appeal from Oakland; Smith, J. Submitted April 12, 1916. (Docket No. 108.) Decided June 1, 1916.

Bill by Agnes Robertson against Charles Everts Smith and another for the reformation of a deed. From a decree for complainant, defendants appeal. Reversed.

*Sylvester J. Pheney,* for complainant.

*Clement E. Miner* and *Clarence Tinker,* for defendants.

STONE, C. J.   The bill of complaint herein was filed to reform and correct the description of a certain parcel of land in the village of Holly contained in a deed to the defendants and in the deeds to other predecessors in title as far back as and including a certain deed executed by John Lacey and wife to Frances A. Rumley, bearing date August 21, 1880.

It is undisputed that James G. Mitchell's plat of the village of Holly was dedicated on May 10, 1855, and, when dedicated, Oakland street, which runs east and west through said village, was 100 feet wide.   Lots 16 and 17 are located on the north side of Oakland street, and are 110 feet in length north and south by 40 feet wide east and west, and the strip of land in dispute is said to be 16½ feet north and south by 25 feet east and west, toward the rear of these lots.

It is also undisputed that on the 27th of September, 1867, by order of the circuit court for the county of Oakland, one rod of both sides of Oakland street was vacated and abandoned by the village for street purposes, and it is claimed that adjacent lot owners immediately took possession of the abandoned part of the street.

Prior to 1880 one John Lacey was the owner of lots 16 and 17, and other lots lying east thereof, of block 1 of said plat, and had been the owner for a number of years.   On August 21, 1880, he and his wife executed a deed to Frances A. Rumley.   In said deed the description of land was as follows:

"Commencing on the south line at the center thereof of lot 16 in block 1, James G. Mitchell's plat of Holly village; thence east 45 feet; thence north 90 feet; thence west 25 feet; thence north to alley; thence west

to a point north of the place of beginning, thence south to the place of beginning, being on section 33, town 5 north, range 7 east, Michigan."

It is the claim in the complainant's bill that Mr. Lacey made an error in the starting point of the description of land contained in said deed, that he intended to sell and convey to Mrs. Rumley, and that Mrs. Rumley intended to purchase, and supposed she had purchased, a piece of land which would be properly described by starting at the north boundary of the street, or one rod south of the original lot line, and that the correct description should have been as follows:

"Commencing at a point one rod south of south line, at the center thereof of lot No. 16 in block 1 of James G. Mitchell's plat of Holly village; thence east 45 feet; thence north 90 feet; thence west 25 feet; thence north to the alley; thence west to a point north of the place of beginning, thence south to the place of beginning, being on section 33, town 5 north of range 7 east, Michigan."

The bill in its stating part seems to have been filed on the theory that there was a mutual mistake of both parties in the description of the premises conveyed, not only in this deed, but also in the deed of Mrs. Rumley to one James H. Cummings, by James H. Cummings to James R. Winglemire, and by James R. Winglemire to the defendants, and that a similar mistake occurred in the deed to the complainant of the property lying east of that, which has been above described, contained in a deed by the heir and legatee of said John Lacey to the complainant, which deed bears date July 5, 1910, in that the starting point in all these deeds should have been one rod further south than that given in the several descriptions.

These claims and allegations of the complainant are all denied by the answer of the defendants; and, among

other things, it is the claim of the defendants that they and their immediate grantor, Winglemire, had been in the possession of the disputed strip of land for many years, cultivating it and claiming to own it, and that the defendants were *bona fide* purchasers under a warranty deed from said Winglemire bearing date November 13, 1909, the consideration of which deed was $1,000; that they purchased and went into possession of said property without any notice or claim that the complainant or her predecessors had or made any claim to the strip of land in dispute.

It will be noted that the vital question in the case was whether there was a mutual mistake in the point ending at 90 feet north of the starting point, at which the boundary or description runs west 25 feet. Whether that point was correctly located there, or should have been 16½ feet further south, is the important question in the case.

It is undisputed that at the time John Lacey and wife executed the deed to Mrs. Rumley he had a large barn located next to the alley in the northwest portion of his remaining property, which was built upon a stone foundation, and that there was a shed some 10 or 11 feet wide upon the south side of the barn extending the whole width of the same east and west. That shed seems to have disappeared some years ago, and long before the defendants made their purchase. If the defendants' claim is correct, the southwest corner of this barn encroached upon the disputed parcel for a distance of about 5 feet north and south and 2 feet east and west in the northeast corner of the disputed parcel. At the hearing the facts were a good deal in dispute.

After reading the entire record, we are impressed with the wisdom of the rule frequently announced by this court and distinctly stated in *Kinyon* v. *Cunningham,* 146 Mich. 430 (109 N. W. 675), viz.:

"To justify the reformation of a written contract upon the ground of mistake in drafting the same, the alleged mistake must be proved by clear and satisfactory evidence, and the mistake must have been mutual and common to both parties to the contract."

Mrs. Rumley was examined as a witness for the complainant at the hearing. Much of her testimony is vague, indefinite, and unsatisfactory. We think it does appear that it was *her* understanding at the time that the south line of the property which she was purchasing was the street where the sidewalk was, but how far north she was to go from there before turning west in her description she was entirely "at sea." She was also quite positive that she did not purchase any part of the land occupied by Lacey's barn; and, while she testified as to the intention of Mr. Lacey, it is very evident that such testimony was a mere conclusion of hers. On cross-examination she testified as follows:

"I just bought the Lacey land described in my deed. I did not buy any other land. I simply bought what was described in the deed. In the deed we have referred to I bought all of the land described in the deed and took possession.

"*Q.* And occupied it up to the time you sold it to Mr. Cummings? (Objection by complainant's counsel.)

"*The Court:* Your description in the deed does not cover, apparently at least, the claims of 16½ feet said to be vacated for a street while you say you bought just what is described. You ought to know what the description is before you answer the question.

"*A.* Yes; but I suppose the description in my deed would show.

"*The Court:* That is disputed. It is clear the deed does not show.

"*A.* Well, I bought from what I call the lot line. I meant that I bought from the lot line."

Whereupon the description in the deed was read to her, and the question was then asked:

"*Q.* That is the land you purchased from Mr. Lacey, is it not?

"*The Court:* Now, if you answer that question as it is, it conflicts with your direct testimony in this case, if you don't know what the description means.

"*A.* I don't know. I couldn't tell the number of feet or anything about it.

"*The Court:* Did you ever study that description to know what it is?

"*A.* No; I never did know anything about it. I suppose I deeded this same property to Cummings that I received from Lacey."

We have referred to this testimony of this principal witness in the case upon the question of mistake to show its unsatisfactory character. Even if we were to hold that the evidence was sufficient to show a mutual mistake made by Mr. Lacey and Mrs. Rumley, we are then confronted with the question whether these defendants, having purchased and paid for this property and entered into possession of it, as we think the evidence fairly shows they did, under their deed above alluded to, should be disturbed in such possession. It has been held as a general rule that a deed will not be reformed against a *bona fide* purchaser for value without notice, assuming the grantor to be lawfully entitled to convey the very quantity denoted by the description in his deed.

We gather from the evidence that there was nothing in the whole transaction even to put these defendants upon inquiry as to any right or claim of the complainant or her grantors in this small parcel of land. It is too well settled to need citation of authority that no reformation of a deed can be made affecting the property after it has gone into the hands of a *bona fide* purchaser for value without notice. *Dart* v. *Barbour,* 32 Mich. 267; *Toll* v. *Davenport,* 74 Mich. 386, 397 (42 N. W. 63); *Culbertson* v. *Witbeck Co.,* 92 Mich. 469 (52 N. W. 993). A *bona fide* innocent purchaser

for value and without notice is the peculiar favorite of a court of equity, and the authorities unite on the proposition that a mistake in a written instrument will not be corrected against such a party. 34 Cyc. pp. 956, 957, and cases cited.

The most that can be said against the defense in this case is that, when the defendants purchased the property, they were informed by their grantor that the Lacey barn projected upon the northeast portion of their premises to the extent of 2 feet in width east and west and about 5 feet in length north and south, and some manure had been from time to time thrown out from the southwest corner of said barn upon their premises. This would be notice to them of any claim which the complainant or her grantor had in that part of the premises so occupied and used. This, however, constituted but a very small portion of the piece of land in dispute, and no resort to equity was necessary to adjust those rights.

It is a significant fact that in the deed to the complainant, after following the metes and bounds contained in the other deeds, there is a specific description of the vacated property as follows:

"Also the land adjacent to above grant on south, released from Oakland street, by an order of the circuit court in [equity] chancery on the north side of said street; all of said lands are in block 1, James G. Mitchell's plat of Holly, on section 33 town 5 north, range 7 east"

—thus making a specific conveyance of the rod in question.

There are many objections raised by defendants' counsel to the right of complainant to any relief in the case, which we do not discuss or rule upon, because we are convinced that, taking the entire record, the complainant has not sustained the burden cast upon her to show that a mutual mistake was made in

the deeds referred to, and especially that no such case has been made out against these defendants which should disturb their rights in this property.

In our opinion, the bill of complaint should be dismissed, without prejudice to the rights of the parties to resort to a court of law to adjust their rights, and the decree of the court below is reversed, with costs to said defendants.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.