In re Michael R. **BLOXSOM** and Cynthia A. Bloxsom, Debtors.

Colleen M. Olson, Trustee, Plaintiff,

v.

Aegis Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., And JP Morgan Chase Bank, f/k/a Bank One, N.A., Defendants.

Bankruptcy No. HM 05–90715.
Adversary No. 07–99016.

United States Bankruptcy Court, W.D. Michigan.

May 30, 2008.

---

Daniel M. Morley, Esq., Traverse City, MI, for Plaintiff/Trustee.

Edith A. Landman, Esq.,[1] Grand Rapids, MI, for Defendants.

---

1. David A. Lerner, Esq. replaced Ms. Landman as counsel for Defendants after the court took this matter under advisement.

## OPINION RE: OCTOBER 8, 2007 MOTION

JEFFREY R. HUGHES, Bankruptcy Judge.

Defendants Aegis Mortgage Corporation ("Aegis"), Mortgage Electronic Registration Systems, Inc. ("MERS") and JP Morgan Chase Bank ("JP/Chase") all seek to dismiss Trustee's complaint against them. The motion is granted.

### STANDARD OF REVIEW

Defendants contend that dismissal of Trustee's complaint is appropriate because Trustee has failed to state a cause of action upon which relief can be granted. FED.R.BANKR.P. 7012(b) and FED.R.CIV.P. 12(b)(6). Defendants have chosen to pursue this motion in lieu of filing an answer to Trustee's complaint. *Id.*

However, Defendants' motion refers to more than the complaint. Defendants, for example, rely upon Debtors' schedules to contend that the subject property has been abandoned under Section 554(c). Consequently, Defendants' motion must be disposed of as if it had been instead brought under FED.R.CIV.P. 56. FED.R.BANKR.P. 7012(b) and FED.R.CIV.P. 12(d).[2] The parties have had sufficient opportunity in conjunction with this motion to present materials beyond the complaint itself. *Id.*

Summary judgment is appropriate if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. FED.R.BANKR.P. 7056(a). The court, in considering a motion for summary judgment, is to focus only upon material facts; that is, the court is to consider only those facts that are important vis-a-vis the applicable substantive

---

2. Defendants have in fact requested in the alternative that their Rule 12(b) motion be disposed of as a Rule 56 motion.

law. Moreover, in determining whether there is a genuine dispute between the parties, the court is to draw all inferences from the record before it in the light most favorable to the non-moving party. However, if the pertinent record would not lead a rational trier of fact to find for the non-moving party even under such favorable circumstances, then summary judgment should be granted.

### BACKGROUND

Michael and Cynthia Bloxsom ("Debtors") owned adjacent lots in the City of St. Ignace, Michigan. Their residence is located on one lot; the other lot is vacant.

Aegis made two separate loans to Debtors in October 2002. According to Aegis, it had intended to take in exchange mortgages in both the residential and vacant lots to secure those loans and indeed Debtors granted two mortgages to MERS as Aegis' nominee.[3] However, neither of the mortgages included a description of the residential lot. Moreover, Aegis did not discover that the mortgages described only the vacant lot until MERS had foreclosed the first mortgage and then attempted to convey both lots to JP/Chase.

Aegis, MERS and JP/Chase (collectively "Defendants") thereupon commenced an action in Mackinac County Circuit Court to, among other things, reform the mortgages.[4] Defendants contend that reformation is appropriate because the omission of the residential lot from the mortgages' descriptions was a mutual mistake.

Unfortunately for Defendants, Debtors commenced their Chapter 7 case well before the Mackinac County action was filed. Debtors' bankruptcy case in turn has prompted Trustee to file this adversary proceeding against Defendants.

### DISCUSSION

Defendants' motion is based upon the previous closure of this case. Trustee had chosen to file her final report only the day after the first meeting of creditors was held.[5] It would appear that her decision was prompted at least in part by Debtors incorrectly stating in their schedules that their residence was encumbered. In any event, the court responded to Trustee's report by entering a closure order on January 25, 2006.

The court's records disclose no further activity until some fourteen months later when Trustee filed her March 20, 2007 motion to "reopen the case."[6]

> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350(b).

Trustee based her motion upon her belated discovery "that the estate possesses an unencumbered asset, being the debtors' real property located at 108 S. Marley Street, St. Ignace, Michigan [*i.e.*, the residential lot], which the parties had previ-

---

**3.** The mortgages are attached as Exhibits F and G to Trustee's complaint. Written instruments that are exhibits to a pleading are part of the pleading for all purposes. FED. R.BANKR.P. 7010 and FED.R.CIV.P. 10(c).

**4.** *See,* April 20, 2007 Mackinac County complaint attached as Exhibit J to Trustee's complaint.

**5.** The Bankruptcy Code requires that a meeting of creditors be held shortly after the commencement of the case and that the debtor attend that meeting. 11 U.S.C. §§ 341 and 343. In this instance, Debtors filed their petition on August 16, 2005 and the first meeting was held on October 12, 2005.

**6.** April 12, 2007 order [Dkt. No. 23].

ously believed to be subject to a mortgage and without equity." [7]

Trustee's motion was granted after it was noticed to the creditor matrix without objection. LBR 9013.[8] Trustee then commenced this adversary proceeding to purportedly avoid Defendants' lien.

### A. The bankruptcy estate's interest in the residential lot was subject to abandonment.

■ Defendants' motion to dismiss is premised upon their contention that Trustee is no longer capable of maintaining her action against them. They argue that the residential lot was abandoned by the estate when the case was first closed on January 25, 2006.

> Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554(c).

Consequently, it is Defendants' position that Trustee is no longer capable of administering the residential lot notwithstanding the reopening of the case.

This court rejected a similar argument in *Moyer v. ABN AMRO Mortgage Group, Inc. (In re Feringa)*, 376 B.R. 614 (Bankr. W.D.Mich.2007). The *Feringa* trustee, like Trustee here, had brought an avoidance action that, according to the defendant, could not be pursued in the reopened case.

> ABN contends that the resultant abandonment included the avoidance action

that [the Trustee] has now brought against it and, as such, the avoidance action can no longer be pursued in the revitalized case.

> The flaw in ABN's reasoning is that the avoidance action was not property of the estate to begin with. Section 541(a) defines the universe of items constituting property of a particular bankruptcy estate. Prominent among those items are any and all interests in property owned by the debtor at the time he commenced his case. 11 U.S.C. § 541(a)(1). Other examples include rents or profits from properly of the estate, 11 U.S.C. § 541(a)(6), and interests acquired by the bankruptcy estate itself. 11 U.S.C. § 541(a)(7).

> However, notably absent from this universe is any avoidance action that the trustee might have or any anticipated recovery that the trustee might realize. Indeed, Section 541 is quite clear that it is only the property that is actually recovered or preserved as a consequence of a successful avoidance action that in fact becomes property of the estate. 11 U.S.C. §§ 541(a)(3) and (4). Nor should it be a surprise that potentially avoidable transfers fall outside of the estate's property given that a trustee's ability to avoid a lien under any of the pertinent bankruptcy sections is a power as opposed to an interest in property itself. "The avoiding powers are not 'property' but a statutorily created power to recover property." *In re Sweetwater*, 55 B.R. 724, 731 (D.Utah 1985), *rev'd on other grounds*, 884 F.2d 1323 (10th Cir.1989).

*Id.* at 624–625.

There is, though, good reason in this instance to question whether Trustee is

---

7. Trustee's March 20, 2007 motion [Dkt. No. 21].

8. Defendants did attempt to set aside the April 12, 2007 order reopening the case short-

ly after its entry. However, their motion was denied. *See*, October 3, 2007 Order and Opinion [Dkt. Nos. 71 and 72].

in fact maintaining a lien avoidance action against Defendants. Although Trustee's complaint is styled as an avoidance action, the prayer for relief includes instead a request that the court "[d]eclare that the Residence remains unencumbered by any lien claimed by the Defendants or any other person."[9] Moreover, Trustee's March 20, 2007 motion for reopening the case states that the reason for the motion was Trustee's discovery of an "unencumbered asset" as opposed to property subject to an avoidable lien. And finally, Aegis and MERS both agree that the mortgages Debtors executed in October 2002 never granted to them a lien in the residential lot.[10] Indeed, it is the acknowledged absence of any lien in this property that has prompted them to seek reformation of the mortgages in the Mackinac County Circuit Court.

 A court in equity can reform an instrument, including a mortgage, to include property that had been omitted by the mutual mistake of both the grantor and the grantee. *Kowatch v. Darnell*, 354 Mich. 197, 200–01, 92 N.W.2d 342 (1958); *Zomerhuis v. Blankvoort*, 235 Mich. 376, 379, 209 N.W. 56 (1926); *Maki v. Karvonen*, 322 Mich. 696, 699, 34 N.W.2d 469 (1948). Moreover, a privy to either party may also seek or be subject to reformation of a document. *Nisbett v. Milner*, 159 Mich. 337, 343, 124 N.W. 22 (1909); *Clarke v. Bussard*, 220 Mich. 304, 308–9, 189 N.W. 873 (1922). However, reformation is not available if the subject property has been acquired by a bona fide purchaser for value and without notice:

We gather from the evidence that there was nothing in the whole transaction even to put these defendants upon inquiry as to any right or claim of the complainant or her grantors in this small parcel of land. It is too well settled to need citation of authority that no reformation of a deed can be made affecting the property after it has gone into the hands of a bona fide purchaser for value without notice. *Dart v. Barbour*, 32 Mich. 267; *Toll v. Davenport*, 74 Mich. 386–397, 42 N.W. 63; *Culbertson v. Witbeck Co.*, 92 Mich. 469, 52 N.W. 993. 92 Mich. 469, 52 N.W. 993. A bona fide innocent purchaser for value and without notice is the peculiar favorite of a court of equity, and the authorities unite on the proposition that a mistake in a written instrument will not be corrected against such a party. 34 Cyc. 956, 957, and cases cited.

*Robertson v. Smith*, 191 Mich. 660, 665–66, 158 N.W. 207 (1916).

 The commencement of Debtors' bankruptcy proceeding did not alter these rules. In other words, Debtors' residential lot was subject to Defendants' claim for reformation of the underlying mortgages immediately prior to the commencement of Debtors' case and, as such, the ensuing bankruptcy estate was also subject to the same claim when it acquired that property by operation of Section 541.[11] However, it is equally true that at that point in time the residence was unencumbered and that it would remain unencumbered unless and until the desired refor-

---

9. Trustee's complaint, p. 5.

10. ¶¶ 23–28, Ex. J, Trustee's Complaint.

11. 11 U.S.C. § 541. All further citations in this opinion to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, will be "Section _____." Debtors' petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L.No. 109–8, § 1501(b)(1), 119 Stat. 23. Therefore, unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will also be to the Code as written prior to the BAPCPA amendments.

mation of the mortgages was successful. Indeed, it is likely that Defendants would not have been able to impose a lien against the bankruptcy estate because of the estate's Section 544(a)(3) status as a bona fide purchaser of what it had received from Debtors at the outset of the bankruptcy proceeding. *Robertson, Id.*[12]

■ Therefore, it makes no sense in this case to speak of Trustee avoiding a lien. Trustee, of course, does have the ability to avoid liens under Section 544(a). However, that section also confers upon a trustee the "rights" of a bona fide purchaser of real property and it is those rights that Trustee is in fact asserting in this instance. Consequently, it is better to characterize Trustee's so-called avoidance action as actually a request for declaratory relief concerning Defendants' claimed right to reform the mortgages vis-à-vis the bankruptcy estate's own right as a hypothetical buyer of that property who had purchased it in good faith.

If, though, the estate's interest in the Debtors' residence was unencumbered at the outset of the case and, as such, avoidance of a lien was unnecessary, it follows that the same unencumbered interest was also subject to Section 554(c) abandonment when Trustee chose to later close the estate without administering that residence. Consequently, Defendants' contention that Trustee no longer has standing to challenge their effort to now reform the underlying mortgages has merit.[13]

**12.** Courts will on occasion recognize an "equitable mortgage" in property. Although that remedy most often is applied in order to mitigate what would appear on its face to be an absolute conveyance, *Townsend v. Chase Manhattan Mortgage Corp.*, 254 Mich.App. 133, 138, 657 N.W.2d 741 (2002), the Sixth Circuit, in applying Michigan law, has in one case concluded that an equitable mortgage could also be imposed in instances where a mortgage had been intended but had not in fact been granted.

> The rule is clearly established that where one party advances money to another upon the faith of a verbal agreement by the latter to secure its payment by a mortgage upon certain lands and improvements, which is not executed, or which, if executed, is so defective or informal as to fall short of being a duly executed mortgage, equity will impress upon such land and improvements a lien in favor of the creditor who advances the money for the security in satisfaction of his debt.

*Schram v. Burt*, 111 F.2d 557, 561 (6th Cir. 1940).
*Schram* then states that "the lien attaches on the advancement of the money and for the same length of time as the debt...." *Id.* Consequently, it would appear that there is at least some authority for the proposition that Debtors' residential lot was encumbered all along by an equitable lien and that Trustee could not have administered the property until that encumbrance had been avoided.

However, *Schram* cites no Michigan authority or, for that matter, any authority, for the broad propositions it makes concerning the doctrine of equitable mortgage. Moreover, the *Schram* panel itself suggests that it would not have imposed the equitable mortgage had there been an intervening good faith purchaser of the property. It is difficult, then, to understand *Schram's* logic if, on the one hand, a court-imposed lien of this type can arise at the beginning of the transaction and continue so long as the original debtor is involved but, on the other hand, suddenly cease to exist should a bona fide purchaser intervene. A more plausible construct is one where the equitable mortgage does not arise until the court actually imposes it and where the equitable mortgage will then be imposed only when no bona fide purchaser has become involved.

**13.** Although I am satisfied that Trustee is in fact seeking in her adversary proceeding declaratory relief rather than the avoidance of a lien, it does not appear that her prospects of success would have been much better had lien avoidance in fact been the appropriate cause of action. Granted, for the reasons already given, Trustee would have had standing to commence the avoidance action notwithstanding the prior closure of the case. However, it is likely that Defendants would have

**B. Trustee's mere reopening of the case under Section 350(b) was insufficient to nullify the prior abandonment of the residential lot under Section 554(c).**

Trustee nonetheless argues that a Section 554(c) abandonment is a "technical" abandonment that can be reversed if a case is later reopened. Section 554(c) abandonments have been so described because they occur automatically upon the closing of the bankruptcy case. In contrast, abandonments under Section 554(a) require the trustee's initiative.

Some courts have relied upon this distinction to nullify a Section 554(c) abandonment in the event a case is later reopened under Section 350(b). For example, in *Figlio v. American Management Services, Inc. (In re Figlio)*, 193 B.R. 420 (Bankr. D.N.J.1996), the court determined that a lawsuit regained its status as property of the estate when the bankruptcy case was reopened notwithstanding Section 554(c) because the case was never "properly and finally" closed in the first place. *Id.* at 424–25. *See also, In re Shelton*, 201 B.R. 147, 155 (Bankr.E.D.Va.1996) ("[R]eopening and thereby reviving a debtor's case would effectively negate any technical abandonments which may have occurred when the case was originally closed") and *Compass Bank for Savings v. Billingham (In re Graves)*, 212 B.R. 692, 695–96 (1st Cir. BAP 1997) (Section 350 order to re-

open case effectively overrode a previous technical abandonment unless the Section 350 order stated otherwise).

Trustee urges that I adopt the same approach in this instance. That is, while Trustee may concede that the January 25, 2006 order closing Debtors' Chapter 7 case caused the residential lot to be abandoned under Section 554(c), she contends that the Section 350(b) order reopening the case some fourteen months later negated both the finality of the prior closure and the effectiveness of the attendant abandonment.

However, the Tenth Circuit has rejected *Figlio, Graves*, and *Shelton.*

> We disagree with the second approach [*i.e.*, the *Figlio, Shelton* and *Graves*] because we do not think reopening a case should always automatically have such a potentially unexpected and unwanted legal consequence. We see no reason, for example, why a debtor seeking to reopen a case in order to schedule an overlooked debt should have to relinquish all technically abandoned properties (which may have in the meantime increased in value through the debtor's efforts); or why, after an intentional technical abandonment, reopening should always bring burdensome properties back into the estate.... Moreover, § 350(b) does not indicate what effect reopening has on technical abandon-

sought dismissal almost immediately, for Section 546(a)(2) unequivocally states that the trustee may not commence an avoidance action after the case is closed.

Some courts have held that reopened cases are not subject to Section 546(a)(2) because they were never "fully administered," *see, e.g., Gross v. Petty (In re Petty)*, 93 B.R. 208 (9th Cir.BAP1988); *White v. Boston (In re White)*, 104 B.R. 951 (Bankr.S.D.Ind.1989); *Decker v. Voisenat (In re Serrato)*, 214 B.R. 219 (Bankr. N.D.Cal.1997); and *In re Stanke*, 41 B.R. 379 (Bankr.W.D.Mo.1984). *Feringa* however, is

to the contrary. 376 B.R. at 622. Merely reopening a previously closed case under Section 350(b) is not enough. Rule 60(b) must instead be invoked to actually set aside the closure order itself. It is certainly possible that Trustee could establish in this instance a reason under that rule for the desired relief. Unfortunately, the reason given would in all likelihood be mistake or misrepresentation by the opposing party and, as such, the request would not be timely. FED.R.CIV.P. 60(b)(1) and (3).

ments, and it does not by its terms provide authority to revoke an abandonment.

*Woods v. Kenan (In re Woods )*, 173 F.3d 770, 777 (10th Cir.1999) (citations, internal quotes, and footnotes omitted).

The *Woods* panel further observed in a footnote:

> Although under § 350, "[a] case may be reopened in the court in which such case was closed to administer assets," technically abandoned assets are by the terms of § 554(c) already deemed "administered." Reopening "to administer assets" is possible only when there are assets unknown to the trustee at the time the case was closed. *See* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 350.03[1] (15th ed. rev.1998).

*Id.* at n. 3.

The reasoning in *Woods* is persuasive. Reopening a case under Section 350(b) is ministerial. *In re Abbott*, 183 B.R. 198, 200 (9th Cir.BAP1995); *In re Germaine*, 152 B.R. 619, 624 (9th Cir. BAP 1993). While Section 350(b) is quite clear that a closed case must be reopened by court order before further activity may take place, the entry of such an order would still leave unaltered the prior order entered under Section 350(a) that had caused the case to be closed in the first place. Consequently, it stands to reason that the

Section 554(c) abandonment occasioned by that prior closure order would also remain unaltered notwithstanding a subsequent order to reopen the case.

Moreover, Section 350(b) imposes no other restriction upon the applicant than a showing of cause. Indeed, a case may be reopened for any number of reasons unrelated to the further administration of an estate's assets. For example, the case may be reopened because the trustee believes that the debtor's discharge should be revoked or because a pro se debtor desires the court to make the appropriate findings with respect to a previously unfiled reaffirmation agreement. As *Woods* astutely observed, it makes no sense to nullify the effect of the prior Section 554(c) abandonment in either of these instances or in any other situation where reopening the case may be needed but further administration of assets is not required.[14]

■ *Woods*' further determination that an aggrieved party can still avail itself of FED.R.CIV.P. 60(b) to avoid the consequences of a Section 554(c) abandonment is equally compelling. That rule, which is incorporated into FED.R.BANKR.P. 9024, permits a party relief from an order if, for example, the order involved "mistake, inadvertence, surprise, or excusable neglect." FED.R.CIV.P. 60(b)(1). Setting aside a closure order under FED.R.CIV.P.

14. *Graves* attempts to sidestep this problem with the qualification that a Section 554(c) abandonment will be preserved notwithstanding the subsequent reopening of the case if the Section 350(b) order so provides. *Graves*, 212 B.R. at 695–96. However, it is unlikely that anyone would insist upon the inclusion of such language other than the former trustee himself and *Graves* offers no explanation as to why the former trustee should bear the burden of ensuring that unwanted assets previously abandoned do not again become property of the estate whenever another party perchance desires to reopen a case. Moreover, nothing within Section 350(b) itself suggests

that the court can include the exception that the *Graves* court contemplates. Indeed, it appears that the *Graves* court was in fact relying upon the separate "order otherwise" language of Section 554(c). While some other courts have certainly relied upon this language as itself permitting the nullification of a prior Section 554(c) abandonment, *see, e.g., Neville v. Harris*, 192 B.R. 825 (D.N.J.1996), the justification for applying that reasoning to an entirely different section of the Bankruptcy Code is not apparent. In any event, *Woods* also rejected the *Neville* approach. *Woods*, 173 F.3d at 777.

60(b) should not be confused, though, with merely reopening the case under Section 350(b). Again, reopening a case is a ministerial act that involves nothing more than some showing of cause. On the other hand, setting aside the original closure order under FED.R.CIV.P. 60(b) requires meeting a much higher standard. As the panel observed in *Woods:*

> Here the bankruptcy court first reopened the case under § 350(b) and then relied on Rule 60(b) to vacate its prior closing order. We review a court's decision to reopen a case under § 350(b) only for an abuse of discretion. Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." We have no trouble concluding that if Rule 60(b) relief was available and warranted, the court was justified in reopening the Woods' case for "cause." The issue of the propriety of Rule 60(b) relief, however, requires a more searching analysis.

173 F.3d at 778–79 (citations and internal quotes omitted). *See also. In re Feringa,* 376 B.R. at 622–23.

Trustee's March 20, 2007 motion certainly established cause for relief under Section 350(b)—she had "recently discovered that the estate possesses an unencumbered asset"[15]—and an order reopening the case under that section was accordingly entered. That motion, though, is devoid of any suggestion that there was reason under FED.R.CIV.P. 60(b) to also set aside the January 25, 2006 order that had previously closed the case. Indeed, Trustee's March 20, 2007 motion makes no reference to the January 25, 2006 order at all. Consequently, there is no room in this instance for Trustee to contend that the April 12, 2007 order reopening the case had the further effect of setting aside the prior closure order under FED.R.CIV.P. 60(b) as well.

## C. *The residential lot was sufficiently "scheduled" for purposes of a Section 554(c) abandonment.*

█ Trustee has also intimated that the residential lot remained property of the estate notwithstanding the January 25, 2006 closure of the case because only "property scheduled under section 521(1)" is deemed abandoned under Section 554(c) at the close of a case. However, this argument is not well founded. Debtors were required to file with the court a schedule of their assets. 11 U.S.C. § 521(a) (pre-BAPCPA). *See also,* FED. R.BANKR.P. 1007(b)(1). That schedule in turn had to comply with the appropriate official form. *Id.* In this instance, the form is Official Form 6A, more commonly known as Schedule A.

The Schedule A that Debtors filed at the outset of their case and upon which Trustee relied clearly lists the two lots as separate parcels, with one identified as "Residence, 108 S. Marley St., St. Ignace, MI 49781" and the other identified as "Small lot adjacent to residence, Property Number 052–014–040–00." Trustee can certainly argue that Debtors' further explanation concerning the liens against the two properties was misleading since Debtors described the residential lot as being substantially encumbered when in fact the residential lot was not subject to any encumbrance at all.[16] However, she cannot complain that the two lots were not scheduled. This is not an instance where the property in question was omitted from the

---

15. 3/20/07 Motion [Dkt. No. 21].

16. Debtors did amend their Schedule A after their case was reopened. The amended schedule now identifies the vacant lot as being subject to the mortgages and the residential lot as being unencumbered.

**62**

schedules altogether. The information that Debtors provided in their Schedule A gave adequate notice to Trustee that Debtor had property interests in two separate parcels of property located in St. Ignace, Michigan that, as property of the estate, were subject to administration. Consequently, those same two lots also became subject to the Section 554(c) abandonment when the Trustee chose, albeit inadvertently, to leave both of the lots unadministered when she filed her final report.[17]

### CONCLUSION

The residential lot that Trustee now seeks to administer was deemed abandoned by operation of Section 554(c) and it remains abandoned notwithstanding Trustee's successful reopening of the case pursuant to Section 350(b). Therefore, it is irrelevant whether Trustee could have prevailed over Defendants' contention that their mortgages with Debtors should be reformed to include that lot. Trustee lost her opportunity to take that position when she chose to close the bankruptcy estate instead of administering further the bankruptcy estate's interest in the lot.

Trustee does preserve whatever remaining right the estate may have to negate the effect of that abandonment through the filing of a motion under FED. R.BANKR.P. 9024 and FED.R.CIV.P. 60(b). However, in the interim, her pending adversary proceeding against Defendants must be dismissed, albeit dismissal will be without prejudice.

A separate order consistent with this opinion will enter.

---

**17.** Trustee, though, is not necessarily without further recourse. If, for example, Debtors in fact intended to deceive her concerning the claimed lien against their residence, Trustee would presumably have the same ability as any other victim of a fraud to seek relief from the appropriate party under applicable non-bankruptcy law.