In re Sergio **CORTEZ** and Georgina Rojas Soto, Debtors.

Michael A. Grassmueck, Inc., Plaintiff,

v.

WFS Financial, Inc., Defendant.

Bankruptcy No. 399–36368–RLD7. Adversary No. 00–3157–RLD.

United States Bankruptcy Court, D. Oregon.

Nov. 22, 2000.

David B. Mills, Hammons & Mills, Eugene, OR, for plaintiff.

Russell D. Garrett, Bullivant Houser Bailey, Vancouver, WA, for defendant.

## MEMORANDUM OPINION

RANDALL L. DUNN, Bankruptcy Judge.

On November 9, 2000, the court heard argument on the defendant WFS Financial, Inc.'s ("WFS") motion for summary judgment, Russell D. Garrett of Bullivant Houser Bailey appearing in behalf of WFS, and David B. Mills of Hammons & Mills appearing in behalf of the chapter 7 trustee plaintiff, Michael A. Grassmueck, Inc. (the "Trustee"). This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334 and United States District Court of Oregon Local Rule 2100–1. In deciding this matter, I have considered carefully the arguments of counsel, the submissions of the parties, including the Affidavits of Michael A. Grassmueck, Russell D. Garrett and David B. Mills, the documents on file in the subject adversary proceeding and main case files, and applicable legal authorities.

### FACTUAL BACKGROUND

The material facts in this case are not in dispute. Sergio Cortez and Georgina Rojas Soto (the "Debtors") set this matter in motion by filing a chapter 7 bankruptcy petition on August 19, 1999. The Debtors scheduled their interest in a 1999 Ford Escort automobile (the "1999 Ford") in Schedule B and the security interest of WFS in the 1999 Ford in Schedule D to their bankruptcy petition. The Debtors' Statement of Intent states their intent to surrender the 1999 Ford.

Since the commencement of the Debtors' chapter 7 case, the Trustee has been the duly qualified chapter 7 trustee.

The Debtors' first meeting of creditors ("First Meeting of Creditors") originally was scheduled for September 16, 1999.

On September 14, 1999, the Debtors filed a motion to reschedule the First Meeting of Creditors, and it was reset by the court to October 18, 1999.

On September 21, 1999, the Trustee filed with the court Trustee's Request That Case Not Be Dismissed For Failure To Attend 341(a) Meeting (the "Request"), based upon the Trustee's determination that "assets appear to be available for administration." The Trustee stated in the Request that "Trustee has identified a possible voidable security interest in debtors [sic] vehicle, a 1999 Ford Escort."

The First Meeting of Creditors did not take place on October 18, 1999, but was reset again to November 4, 1999. The Trustee presided over the Debtors' First Meeting of Creditors on November 4, 1999, at the U.S. Trustee's office in Portland, Oregon, and had an opportunity to examine, and did examine, the Debtors concerning their assets and liabilities. At the First Meeting of Creditors, the Debtors provided documents to the Trustee pertaining to the 1999 Ford, including copies of the purchase agreement and motor vehicle registration.

On November 5, 1999, the Trustee signed and filed an Inventory and Report of No Assets with the court. Local Bankruptcy Rule 2015–1.A.1. requires that a trustee in a chapter 7 case file an original Inventory and Report of Assets "immediately after completion of the § 341(a) meeting in a 'no-asset' case, or within 11 days after completion of such meeting in an asset case."

On November 10, 1999, the Trustee's office requested the title history for the 1999 Ford from the Oregon Department of Motor Vehicles.

On November 18, 1999, the court entered an order (1) discharging the Debtors, (2) discharging the Trustee, and (3) closing the Debtors' chapter 7 case as a "No Asset" case, which order was served on all interested parties.

On December 10, 1999, the Trustee filed a motion to reopen the Debtors' bankruptcy case as in the best interests of creditors, to allow for administration of assets based upon the Trustee's determination that WFS' security interest in the 1999 Ford was voidable.

The court scheduled a hearing on the Trustee's motion to reopen for January 13, 2000, which was noticed to creditors and interested persons. Following the hearing on the Trustee's motion, the court entered an order reopening the case "for further administration."

On January 19, 2000, the Trustee filed an Inventory and Report of Assets, identifying a "voidable security interest in a 1999 Ford Escort."

By letter dated January 31, 2000, the Trustee's attorney contacted the attorney for WFS, advising him of the claims set forth in the Complaint in this adversary proceeding and inquiring regarding representation. On March 8, 2000, WFS' attorney responded to the January 31, 2000 letter, requesting additional time to advise regarding WFS' position. Following further correspondence between counsel for the parties, on June 20, 2000, the Trustee filed the Complaint in this Adversary Proceeding, seeking to avoid WFS' security interest in the 1999 Ford because WFS submitted the 1999 Ford title application more than 20 days after the Debtors took possession of the 1999 Ford.

The Trustee states that ordinarily, "no asset" cases are not closed until approximately 60 days following the date initially set for the first meeting of creditors. The Trustee further states that even in cases where the Trustee has a basis for believing that there is a voidable security interest in a vehicle, such cases not uncommonly are designated as "no asset" cases in order "to allow the closing of the case and to avoid unnecessary administration expenses at the clerk's office." During the 60 day period between the date of the first meeting of creditors and the typical closing date, the Trustee investigates the issue of avoidability by obtaining an Oregon Department of Motor Vehicles report. If it is determined that a questioned security interest is avoidable, the Trustee files an Amended Inventory and Report of Assets that keeps the case open.

In this case, the Trustee asserts that his original filing of the "no assets" report was "a mistake and inadvertent." He blames the two adjournments of the First Meeting of Creditors for disrupting his timetable, with the closing of the Debtors' bankruptcy case catching him off guard.

### ISSUES

WFS asserts, and the Trustee disputes, that WFS is entitled to summary judgment on its affirmative defenses to the Trustee's claims in this adversary proceeding because (1) the statute of limitations in 11 U.S.C. § 546(a)(2) ran when the Debtors' chapter 7 case first was closed on November 18, 1999, or in the alternative, (2) the Trustee's claim was abandoned as an asset of the estate when the case first closed under 11 U.S.C. § 554(c).

### DISCUSSION

#### A.  Summary Judgment Standards

Granting a motion for summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *State Farm Mutual Auto. Ins. Co. v. Davis*, 7 F.3d 180, 182 (9th Cir.1993). In considering a motion for summary judgment, the court is required to draw all inferences from the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

#### B.  The Statute of Limitations in Section 546(a)(2)

■ Determining the limitations issue in this case requires consideration of two pro-

visions of the Bankruptcy Code. Section 546(a)(2)[1] provides that certain actions, such as the Trustee's lien avoidance/preference action in this case, "may not be commenced after the earlier of—... the time the case is closed or dismissed." As its first line of defense, WFS urges that section 546(a)(2) should be interpreted and applied consistent with its "plain meaning," barring the Trustee's action against WFS based upon the original closing of the Debtors' main case on November 18, 1999, before the Trustee's adversary Complaint was filed.

However, the "plain meaning" argument does not take into consideration the possibility that a bankruptcy case may be reopened. Without reference to any of the limitations provisions or the Bankruptcy Code, section 350(b) provides that "[a] case may be reopened in the court in which such case was closed *to administer assets*, to accord relief to the debtor, *or for other cause*." [Emphasis added.] In fact, the Debtors' bankruptcy case was reopened on the Trustee's motion to allow for further administration.

The Trustee argues that the reopening of a case to administer assets always trumps the provisions of section 546(a)(2), and the "real" statute of limitations for trustee actions under sections 544, 545, 547, 548 and 553 of the Bankruptcy Code is the alternative set of limitations set forth in section 546(a)(1)[2]. In the Trustee's view, section 546(a)(2) only applies where no further assets are found to administer after case closure.

Accepting either party's argument deprives one or the other provision of the Bankruptcy Code of meaning. A number of courts have held, and WFS concedes, that the limitations provisions of section 546(a)(2) do not preclude actions to pursue assets in reopened cases where the failure to discover or administer assets prior to original case closure was the result of ambiguity or nondisclosure in debtors' schedules. *See, e.g., In re Petty,* 93 B.R. 208, 211–12 (9th Cir. BAP 1988); *In re Serrato,* 214 B.R. 219, 226 (Bankr.N.D.Ca.1997); *White v. Boston,* 104 B.R. 951 (S.D.In. 1989). Likewise, a bankruptcy case can be reopened to administer an asset that was not located or pursued through mistake, inadvertence or excusable neglect pursuant to Fed.R.Civ.P. 60(b), incorporated in Fed.R.Bankr.P. 9024. *See, e.g., In re Schmid,* 54 B.R. 78, 80–81 (Bankr.D.Or. 1985). Such ambiguity or nondisclosure, or excusable neglect constitutes the requisite "cause" to allow for a bankruptcy case to be reopened for administration of assets pursuant to section 350(b).

Given these exceptions to section 546(a)(2) operating as an absolute bar to trustees pursuing lien avoidance claims in reopened cases, WFS nevertheless argues that the original case closing should preclude the Trustee from proceeding against WFS in the circumstances of this particular case. The Debtors clearly included the 1999 Ford on their Schedule B and identified WFS' security interest in the 1999 Ford on Schedule D. There was no failure to disclose nor ambiguity in disclosure. In fact, prior to the First Meeting of Creditors, the Trustee had "identified a possible voidable security interest" in the 1999 Ford, as reflected in the Request.

At the First Meeting of Creditors, the Trustee had the opportunity to examine the Debtors concerning the 1999 Ford and WFS' security interest therein, and the Debtors delivered to the Trustee copies of the 1999 Ford purchase agreement and

---

1. Unless otherwise noted, all section references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2. Section 546(a)(1) provides: "An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—(1) the later of—(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A)...."

motor vehicle registration. Yet, on the following day, the Trustee signed and filed an Inventory and Report of No Assets with the court.

The Trustee asserts that the filing of the "no asset" report was a mistake and inadvertent. A mistake, maybe; but inadvertent, no, as Mr. Grassmueck stated in his affidavit that cases in which avoidable security interests are suspected are "not uncommonly designated" as "no asset" cases prior to receiving reports from the Oregon Department of Motor Vehicles. Nothing in the Local Bankruptcy Rules of the Oregon Bankruptcy Court requires that a "no asset" report be filed in a case where the trustee is still investigating the availability of assets for administration.

Relying on an expected gap of approximately 60 days between the First Meeting of Creditors and case closure, the Trustee may not have intended that the Debtors' bankruptcy case be closed prior to pursuit of a lien avoidance claim against WFS. However, by filing the "no asset" report hard on the heels of the First Meeting of Creditors, the Trustee took the risk that the case would be closed before the Trustee knew whether it had a claim against WFS or not.

The Trustee argues that any errors of omission in the original "no asset" report were wiped away when the Debtors' bankruptcy case was reopened because a case is not properly and finally closed for section 546(a)(2) purposes until all assets have been fully administered. Accordingly, absent passing of the section 546(a)(1) limitations, all unrealized claims should be revived for administration in a reopened case. However, as noted in *Collier on Bankruptcy*, § 546.02[2][b] at p. 546–17 (15th ed. revised 2000), since section 350(b) provides that a bankruptcy case always can be reopened for cause, grafting a "properly and finally" closed standard that is not provided for in the Bankruptcy Code on the limitations provisions of section 546(a)(2) is questionable.

■ Besides, imputing such far-reaching implications to a simple order reopening a case is not justified. "The reopening of a case is merely a ministerial or mechanical act which allows the court file to be retrieved from the stacks of closed cases to enable the court to receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the case." *In re Germaine,* 152 B.R. 619, 624 (9th Cir. BAP 1993). Also see *In re Woods,* 173 F.3d 770, 777 (10th Cir.1999); and *In re DeVore,* 223 B.R. 193, 198 (9th Cir. BAP 1998).

In this case, the court granted the Trustee's motion to reopen the Debtors' bankruptcy case "for further administration," but did not make any determination thereby that the Trustee's action against WFS could proceed.

It is ironic in this case that the Trustee seeks to be saved from the running of a statute of limitations deadline in order to pursue claims that do not arise from any alleged fraud or misconduct by WFS but result only from the fact that WFS may have missed the 20–day deadline for filing the 1999 Ford title application with the Oregon Department of Motor Vehicles. I find that there is no ambiguity or failure of disclosure in the Debtors' schedules either as to the 1999 Ford or WFS' security interest therein that constitutes cause for reopening the Debtors' bankruptcy case to allow the Trustee to proceed with its claims in this adversary proceeding. Further, I find that it was a mistake in the circumstances of this case for the Trustee to file a "no asset" report immediately following the First Meeting of Creditors when the Trustee already had identified the possibility of a voidable security interest in the 1999 Ford in the Request and through examination of the Debtors and copies of their purchase agreement and motor vehicle registration for the 1999 Ford.

However, I do not find that the Trustee's filing of the "no asset" report, that

arguably triggered case closure, is such a mistake, inadvertence or excusable neglect as would constitute just cause for reopening the Debtors' bankruptcy case for administration of the Trustee's claims against WFS under Fed.R.Civ.P. 60(b)(1) and Fed.R.Bankr.P. 9024. The Trustee filed the original Inventory and No Asset Report according to its "not uncommon" practice. In these circumstances, the filing of the "no asset" report was not an inadvertent error. That LBR 2015–1.A.1. sets time limits for filing an Inventory and Report of Assets does not alter this analysis.

The Trustee took the risk that the case would close and the limitations period in section 546(a)(2) would run prior to the Trustee verifying whether it had a lien avoidance claim against WFS or not, and the limitations period ran prior to the filing of an amended assets report and the Complaint in this adversary proceeding. Accordingly, I find that WFS is entitled to summary judgement on its section 546(a)(2) affirmative defense to the Trustee's Complaint.

Having fully determined this matter on the basis of WFS' first affirmative defense, I do not reach WFS' further argument that the claims asserted in the Trustee's Complaint were abandoned pursuant to section 554(c).

### CONCLUSION

Based upon the evidentiary record in this matter, as reflected in the submissions of the parties and the documents on file in the main case and adversary proceeding files, and applicable law, I find that WFS has established as a matter of law that the claims asserted by the Trustee in the Complaint in this adversary proceeding are barred by the statute of limitations set forth in section 546(a)(2) of the Bankruptcy Code. This Memorandum Opinion contains the court's findings of fact and conclusions of law, which will not be stated separately.

WFS' motion for summary judgment is granted. Counsel for WFS shall prepare and submit within ten (10) days following the date of entry of this Memorandum Opinion a form of judgment consistent herewith.