**In re Christine R. MULLEN, Debtor.**

**Christine R. Mullen, Plaintiff,**

**v.**

**Earl L. Kalil, Jr., Defendant.**

**Bankruptcy No. 03–11963 MWV.**
**Adversary No. 05–1095–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Feb. 1, 2006.

Terrie Harman, Esq., Portsmouth, NH, for Plaintiff.

Steven M. Latici, Esq., McKean, Mattson & Latici, P.A., Gilford, NH, for Plaintiff.

Daniel W. Sklar, Esq., Nixon Peabody LLP, Manchester, NH, William C. Saturley, Esq., Nelson, Kinder, Mosseau & Saturley, P.C., Manchester, NH, for Defendant.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it "Defendant's Motion for Summary Judgment," along with a memorandum of law, filed by Earl L. Kalil, Jr. (the "Defendant"). Christine R. Mullen (the "Plaintiff") filed "Plaintiff's Opposition to Defendant's Motion for Summary Judgment," along with a memorandum of law, to which the Defendant responded with "Defendant Earl Kalil's Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment." The Defendant seeks summary judgment on all claims arising from the transfer of a leasehold and a gym business.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

The Plaintiff and the Defendant are divorced from each other. In 1996, after the divorce, the Plaintiff, along with a minor partner, began the process of opening a gym. To begin with, she formed two New Hampshire corporations, K & W Fitness, Inc., and Raynes Realty, Inc. The Plaintiff was the sole shareholder of Raynes Realty and the 98% shareholder of K & W Fitness. Through Raynes Realty, the Plaintiff entered into a long-term lease for commercial property. To begin financing the gym construction, the Plaintiff obtained a $300,000 loan from Bank of New Hampshire, securing the loan with the leasehold rights, a third mortgage on her residence, and guaranties from the Plaintiff's two corporate entities. The Plaintiff's partner fell out of the picture, and the Plaintiff sought an additional $575,000 from Bank of New Hampshire for further renovation, but the Bank declined to extend additional funds. This financing was ultimately provided by First Alliance Bank. Additionally, the gym's landlord, the Mitchell A. Hyder and Edward A. Hyder Irrevocable Trust of 1993 (the "Hyder Trust"), loaned the Plaintiff $250,000 to help finish the project. However, the debt was too much for the business. The Defendant became involved and negotiated an early repayment with First Alliance, resulting in debt forgiveness of $86,765. In order to repay First Alliance and to generally alleviate her business and personal debt, the Plaintiff sought to sell her home. However, Bank of New Hampshire held a third mortgage on the residence. In exchange for the Bank's release of the mortgage, the Defendant personally guaranteed the Plaintiff's outstanding debt owed to Bank of New Hampshire.

As the Plaintiff's business continued to deteriorate, she attempted to sell the leasehold, but no sale was consummated. Soon thereafter, in May 2001, Bank of New Hampshire notified the Plaintiff that the Bank would not renew its loan when it matured on July 1, 2001. With default looming, the Plaintiff assigned the lease to

the Defendant, with the Plaintiff to make rental payments to the Defendant beginning after three months. Pursuant to their agreement, the Defendant began making payments on the lease, payments to the Bank of New Hampshire, and payments on the Hyder Trust loan. A potential buyer of the gym business came along in late 2001, but the negotiations fell through. In January 2002, the Plaintiff transferred the leasehold interest of Raynes Realty, Inc., and the gym business, K & W Fitness, Inc., to the Defendant. The Defendant eventually sold the business and its assets for $100,000.

On June 2, 2003, the Plaintiff filed a voluntary Chapter 7 petition. On Schedule B, the Plaintiff listed as personal property the following: "Contingent claim against Bank of New Hampshire and Earl L. Kalil for breach of duty of good faith and fair dealing; tortious interference; breach of contract and unfair trade practices." The claim arises out of the transfer of the lease and business to the Defendant. At the section 341[1] meeting, the Plaintiff stated that she was unable to find counsel who would pursue her claim on a contingency fee basis, and the cost of retaining counsel on an hourly basis was estimated to be at least $75,000. The claim was the subject of correspondence between the Chapter 7 trustee (the "Trustee") and Plaintiff's counsel, but the Trustee, like the Plaintiff, could not find an attorney willing to work on a contingency fee basis. The Trustee filed a Report of No Distribution, certifying pursuant to Bankruptcy Rule 5009 that the estate had been fully administered. Although the contingent claim was listed in the bankruptcy schedules, discussed at the section 341 meeting, and the subject of correspondence between the Trustee and various attorneys involved in the case, including Plaintiff's counsel, the claim was not pursued prior to January 13, 2004, when the Plaintiff received a discharge and her Chapter 7 case was closed.

In March 2004, the Plaintiff moved to reopen her bankruptcy case in order to pursue the contingent claim. The Plaintiff also sought conversion to Chapter 13. However, the Plaintiff withdrew her motion after the United States Trustee objected on the grounds that the Plaintiff was not eligible for Chapter 13. On March 18, 2005, the Chapter 7 Trustee moved to reopen the case in order to pursue the contingent claim. The Plaintiff objected because the Trustee had long known of the claim and had failed to pursue it while the bankruptcy case was pending, and also because the Trustee showed no interest in pursuing the claim a year prior when the Plaintiff moved to reopen the case.[2] Along with her objection to the Trustee's motion to reopen, the Plaintiff filed her own motion to reopen the bankruptcy case so she could pursue a malpractice claim against the Defendant. The Court granted the Trustee's motion, and the case was reopened on April 12, 2005, and converted to Chapter 11.

There are two adversary proceedings pending in pursuance of claims arising from the transfer of the leasehold and the gym business to the Defendant.[3] The

---

**1.** Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

**2.** Apparently, the Trustee sought to reopen the case not because he considered the avoidance claim meritorious, but because the Defendant's insurance carrier had offered $50,000 to settle the claims against the Defendant.

**3.** Adversary proceeding 05–1095–MWV is the proceeding in which the five-count avoidance complaint that is the subject of this memorandum opinion was filed. Adversary proceeding 05–1113–MWV is a state court malpractice action, based on the same transactions,

Plaintiff's complaint presents five counts alleging the following: the transfers of the lease and the business are avoidable as fraudulent transfers pursuant to section 548 of the Bankruptcy Code (Counts I and II); the transfers of the lease and the business are avoidable under section 544(b) because the transfers are voidable under the New Hampshire Fraudulent Transfer Act, RSA 545–A (Counts III and IV); and based upon the Defendant's status as a creditor of the Plaintiff's bankruptcy estate, the transfers are avoidable preferences pursuant to section 547(b) of the Bankruptcy Code (Count V).

## DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 38 (1st Cir. 1993) (quoting *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Ti-*

*rado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

### B. The Contingent Claim and the Avoidance Claim are One in the Same

The Plaintiff argues that the contingent claim disclosed in her bankruptcy schedules is different from the avoidance action that she currently seeks to pursue. The Court finds, however, that the information in the schedules clearly identified the instant claim against the Defendant. The avoidance action arises from the same transactions (the transfers of the leasehold and the gym business). The Court also rejects the Plaintiff's argument that, during the pendency of the bankruptcy case, the Trustee was confused as to the nature of the avoidance claim, perhaps failing to comprehend that there was an avoidance claim against the Defendant and possibly the Bank, as well as a separate malpractice claim against the Defendant. There is no evidence in the record that indicates any such misunderstanding. In fact, the transcript of the 341 meeting and the correspondence between the Trustee and various attorneys involved in the case indicate that the Trustee was well aware of the claims involved. Additionally, the Trustee has practiced law and served as a trustee in this jurisdiction for a significant amount of time. The Court is convinced that the Trustee's non-pursuit of the avoidance claim was not the result of confusion or

---

that was removed to this bankruptcy court. Mr. Kalil is the Defendant in both proceedings. In the 05–1095–MWV proceeding, Ms. Mullen is the sole plaintiff, while in the 05–1113–MWV proceeding Ms. Mullen, K & W Fitness, Inc., and Raynes Realty, Inc., are co-

Plaintiffs. For trial purposes, the Court consolidated the adversary proceedings. This memorandum opinion, though, concerns the avoidance proceeding, not the malpractice proceeding.

misunderstanding. Rather, the record indicates the Trustee made an informed decision.

### C. Section 546(a)

■ In his motion for summary judgment, the Defendant presents three arguments. Because the Court agrees that all counts alleged by the Plaintiff are barred by the statute of limitations, the Court need not consider the Defendant's alternative arguments.

The Plaintiff seeks to avoid the transfers of the lease and the business pursuant to sections 544, 547, and 548. The statute of limitations is provided by section 546(a)(2), which provides:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> ....
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a)(2) (2000). The Plaintiff's bankruptcy case was closed on January 13, 2004, pursuant to section 350(a). The Plaintiff's case was reopened on April 12, 2005, pursuant to section 350(b). Section 350 provides, in its entirety:

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
>
> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350.

As Congress saw fit to bar the commencement of avoidance and preference actions after the closing of a case and yet also allow the reopening of cases under certain circumstances, sections 546 and 350 must be reconciled with one another. Congress gave no hint whether the section 546 limitation is an absolute bar that prevails even if a case is properly reopened. Whether actions time-barred by section 546(a)(2) may be revived when a case is reopened pursuant to section 350(b) is a matter of first impression in this circuit. Because section 546(a) does not make reference to section 350, courts have had to consider whether all actions barred by section 546(a) may be pursued anew upon reopening, or whether once a case is closed or dismissed those actions are forever lost, regardless of subsequent reopening. *See, e.g., In re Cortez,* 255 B.R. 324, 327 (Bankr.D.Or.2000) (rejecting both positions because "[a]ccepting either [of these polarized arguments] deprives one or the other provision of the Bankruptcy Code of meaning").

■ Reported cases from other jurisdictions reveal that in some circumstances an action covered by section 546(a)(2) may be pursued upon the reopening of a bankruptcy case. In *In re Petty,* 93 B.R. 208 (9th Cir. BAP 1988), the debtor sold a parcel of land and then assigned his right to payment before filing his bankruptcy petition. The debtor did not list the property or the assignment in his petition, the Chapter 7 trustee filed a no asset report, and the court closed the case. Thereafter, the court granted the trustee's motion to reopen the case to pursue avoidance. The appellate panel affirmed the bankruptcy court's conclusion that section 546(a) did not bar the preference action because the transfer was not disclosed in the debtor's bankruptcy petition. *Id.* at 212. The panel held that the preference action could proceed because the case had not been properly closed pursuant to section 350(a). *Id.* The term "closed" "must be read to mean properly and finally closed." *Id.* Since section 350(a) directs the court to close the case after the estate has been fully administered, the case was not prop-

erly closed because an estate cannot be fully administered if assets of the estate are not disclosed in the bankruptcy petition. *Id.; see also White v. Boston,* 104 B.R. 951, 955 (S.D.Ind.1989) ("[I]t is clear that the closing of a case cannot trigger section 546(a)(2) unless the case has been *properly* closed, i.e., the assets fully administered."); *In re Peebles,* 224 B.R. 519, 520–21 (Bankr.D.Mass.1998) ("[A] case is not properly or finally closed until the assets of the estate are fully administered; and the Debtor's failure to schedule the assets at issue in this proceeding resulted in their remaining unadministered upon the closing of the case."); *In re Serrato,* 214 B.R. 219, 226 (Bankr.N.D.Cal.1997) ("[A] case has not been fully administered pursuant to § 350(b) [sic] and is not properly and finally closed where the court discovers a potential asset that the debtor has failed to disclose in a bankruptcy petition . . . ."). In *White,* the debtors failed to disclose a third mortgage on their home. *White v. Boston,* 104 B.R. at 953. As in *Petty,* the *White* court concluded that the statute of limitations in section 546(a) did not bar the trustee from reopening a case to pursue an avoidance action under either sections 544 or 547 because the asset was not disclosed in the bankruptcy petition. *Id.* at 955.

When assets are disclosed, the result is different. In *Cortez,* the court held that the statute of limitations of section 546 barred the trustee from pursuing an avoidance action upon the reopening of a case. *In re Cortez,* 255 B.R. at 327–29. The debtors listed in their schedules a security interest in a vehicle, and the trustee was aware that the security interest was potentially voidable. The trustee filed a no asset report, after which the court promptly closed the case. The trustee inadvertently assumed he would have time after filing his report, but before the case was closed, in which to pursue avoidance of the lien. Central to the court's application of the statute of limitations was that the debtors listed the lien on their schedules and the trustee was aware of the potential for avoidance.

The foregoing cases demonstrate that when an asset has been concealed or undisclosed in the bankruptcy petition, actions or proceedings otherwise barred by section 546 may be pursued after a case is reopened. However, when, as in the case at hand, the asset is disclosed in the bankruptcy schedules and the trustee is aware of the asset and had an opportunity to pursue an avoidance action but failed to do so during the pendency of the bankruptcy case, section 546(a) bars the resurrection of such an action or proceeding in the event that the case is reopened. In this situation the estate has been fully administered, and the case has been properly and finally closed. Accordingly, the Court holds that the five counts alleged in the Plaintiff's complaint are barred by section 546(a).

### CONCLUSION

As there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law, the Defendant's motion for summary judgment is granted. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.