In re Craig Russel FERINGA and Michele Rae Feringa, Debtors.

Jeff A. Moyer, Trustee, Plaintiff,

v.

ABN Amro Mortgage Group, Inc., Defendant.

Bankruptcy No. HG 06–02562. Adversary No. 07–80156.

United States Bankruptcy Court, W.D. Michigan.

Oct. 3, 2007.

Timothy Hillegonds, Esq., Grand Rapids, MI, for Plaintiff.

John K. Guthrie, Esq., Brighton, MI, for Defendant.

### OPINION RE: DEFENDANT'S MAY 31, 2007 MOTION TO DISMISS ADVERSARY PROCEEDING OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

Jeff A. Moyer, the Chapter 7 trustee in this case, commenced an adversary proceeding against ABN AMRO Mortgage Group, Inc. ("ABN") to avoid a mortgage ABN claims against Debtors' residence. ABN in turn has filed a motion that it describes in the alternative as either a motion to dismiss or a motion for summary judgment. ABN first contends that Mr. Moyer's complaint should be dismissed for lack of subject matter jurisdiction because he allegedly does not have standing. FED.R.BANKR.P. 7012(b). The plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir.2000). When considering a motion that questions the factual existence of jurisdiction, no presumption of truthfulness applies to the factual allegations in the pleadings. *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990). Rather, the court is to consider the conflicting evidence to determine whether the factual predicate necessary for the jurisdiction claimed exists. The court's inquiry may necessitate an evidentiary hearing. However, in this instance, ABN has not requested such a hearing. Therefore, the court is to consider the factual issues as presently raised as if ABN's motion is one for summary judgment brought pursuant to Rule 7056.[1] *Id.*

ABN also contends that Mr. Moyer's complaint should be dismissed because he has failed to state a claim upon which relief can be granted. Rule 7012(b) and FED.R.CIV.P. 12(b)(6). ABN argues that Mr. Moyer is barred from commencing the complaint by the statute of limitations imposed by Section 546(a) of the Bankruptcy Code.[2] ABN further argues that Mr. Moyer may not now maintain the claim he has commenced against it because that claim had been abandoned when the bankruptcy estate was previously closed. 11 U.S.C § 554(c).

ABN's Rule 7012(b)/FED.R.CIV.P. 12(b)(6) motion goes outside of the pleadings of this adversary proceeding because it requires consideration of Mr. Moyer's activities in conjunction with his general administration of the bankruptcy estate. Therefore, 1 am disposing of this portion of ABN's motion to dismiss as if it were also a motion for summary judgment brought under Rule 7056. FED.R.BANKR.P. 7012(b). I further determine that both Mr. Moyer and ABN have been given a

---

1. FED.R.BANKR.P. 7056. Unless designated otherwise, all further citations to "Rule _____," shall be to the Federal Rules of Bankruptcy Procedure.

2. 11 U.S.C. §§ 101–1532. This case was commenced after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub.L. No. 109–8, 119 Stat. 23. Unless otherwise indicated, all citations to "Section _____" shall be to the Bankruptcy Code as currently enacted.

reasonable opportunity to present all materials pertinent to this aspect of ABN's motion. *Id.*

### STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. FED.R.BANKR.P. 7056(a). The court, in considering a motion for summary judgment, is to focus only upon material facts; that is, the court is to consider only those facts that are important vis-a-vis the applicable substantive law. Moreover, in determining whether there is a genuine dispute between the parties, the court is to draw all inferences from the record before it in the light most favorable to the non-moving party. However, if the pertinent record would not lead a rational trier of fact to find for the non-moving party even under such favorable circumstances, then summary judgment should be granted.

### BACKGROUND

ABN refinanced its mortgage loan to Debtors in 2002. ABN contends that while it had tried at that time to record the executed mortgage, the register of deeds office wrongfully returned the mortgage unrecorded because of supposed irregularities in the notary information. ABN, though, did not attempt to correct the problem at that time. Rather, it inexplicably waited until May 26, 2006, to file what ABN then characterized as a "claim of interest" against Debtors' residence. ABN also resubmitted the mortgage itself for recording shortly thereafter. The mortgage indicates that the register of deeds received it the second time on June 1, 2006.

Unfortunately for ABN, Debtors filed their petition for relief only four days after the mortgage had been resubmitted. Con-sequently, the lien claimed by ABN was subject to potential avoidance in connection with the ensuing bankruptcy case. Mr. Moyer acknowledges that he was aware of ABN's exposure and that he had intended to pursue an avoidance action against it. However, Mr. Moyer himself interfered with this intention by filing a report on November 27, 2006 to the effect that the Debtors' bankruptcy case had been fully administered. The court then acted upon that report by entering an order on December 28, 2006 that, among other things, closed the Chapter 7 case.

Mr. Moyer reacted to the December 28, 2006 order by filing on January 12, 2007, a motion entitled "Motion for Relief from Order Closing Case to Administer Assets." Mr. Moyer indicated in that motion that the case had erroneously been closed because of a mistake by his clerical staff. The motion also asked for relief under "either Fed.R.Bkrtcy.P. [sic] 9024(a) and/or § 350(b)...."

I initially granted Mr. Moyer's motion by entering an ex parte order on January 19, 2007 that reopened the case pursuant to Section 350(b). However, Mr. Moyer thereafter filed a motion on January 29, 2007 to amend that order. He explained in his new motion that I had misinterpreted the relief he had sought with respect to the December 28, 2006 order closing the Chapter 7 case. Mr. Moyer had not wanted, as I had first believed, that the case be simply reopened pursuant to Section 350(b). Rather, he had intended that I set aside the December 28, 2006 order altogether under Rule 9024 on the theory that that order had been entered by mistake.

I was satisfied, after reviewing again the January 12, 2007 motion, that the relief Mr. Moyer was requesting was more appropriately sought under Rule 9024. Consequently, I set aside the January 19, 2007 order that had reopened the case under Section 350(b). I also scheduled Mr. Moy-

er's January 12, 2007 motion for hearing. Notice of that hearing was served by mail upon all creditors, including ABN.

The hearing regarding Mr. Moyer's January 12, 2007 motion was held on March 8, 2007. The only person who appeared at the hearing other than Mr. Moyer himself was Ms. Feringa, one of the debtors. I granted the motion at the hearing and I then signed an order prepared by Mr. Moyer. That order, which was entered on March 26, 2007, stated in pertinent part, that "IT IS HEREBY ORDERED that the prior Order of this Court closing this case is hereby **SET ASIDE**, . . . ." The court's records further indicate that Mr. Moyer served this order upon the matrix of creditors on March 27, 2007 and that ABN was also one of the recipients of that service.

Mr. Moyer commenced his adversary proceeding against ABN the day after the order setting aside the closure of the case was served. That complaint seeks the avoidance of the lien granted by Debtors to ABN as a preference pursuant to Sections 547 and 550. Service of the complaint and summons prompted ABN to file the motion to dismiss now before me.

### DISCUSSION

#### A. *Mr. Mover's Standing*

█ ABN contends that Mr. Moyer had no standing to challenge the December 28, 2006 order closing Debtors' case because that order also discharged him from all of his duties. As such, ABN reasons that Mr. Moyer is no longer an interested party. ABN posits this argument in the context of Rule 5010, which reads in relevant part:

A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code.

Fed.R.Bankr.P. 5010.

However, ABN's argument applies equally when, as in the case here, a former

trustee attempts to set aside a prior closure order under Rule 9024.

ABN is technically correct in its assertion that Mr. Moyer, as the former trustee of the closed case, had no certain stake in the case were it to be reopened. There is no doubt that Mr. Moyer, if reappointed, intended to vigorously pursue the bankruptcy estate's avoidance action against ABN. However, it is also true that there was no guaranty that Mr. Moyer would have been reappointed as the trustee in the reopened case. Indeed, there was no guaranty that the successor trustee would even pursue the avoidance action if Mr. Moyer were not reappointed. Nonetheless, I conclude that Mr. Moyer's interest in pursuing the avoidance action, coupled with the high probability that he would be reappointed as the trustee if the closure order were set aside, is enough in and of itself to have given Mr. Moyer sufficient standing to file the January 12, 2007 motion. I see nothing to be gained from categorically excluding a former trustee from this process. After all, he would presumably be the person most familiar with the case at that point in time. Moreover, to the extent that his views might be biased or that there might be some other reason to discount his views, those concerns could be addressed through the court's own consideration of the request being made.

Moreover, Mr. Moyer was personally at risk because of his premature closure of the case. Consequently, his interest in reopening the case transcended the pecuniary issue of whether he might profit after reappointment from a successful prosecution of the avoidance action against ABN. Pursuit of the avoidance action against ABN by any trustee in the reopened case, whether successful or not,

offered an opportunity for Mr. Moyer to exonerate himself from any suggestion that his mistake had harmed the estate. Indeed, even the decision by another trustee not to proceed would have an ameliorative effect.

ABN cites only *In re Ayoub*, 72 B.R. 808 (Bankr.M.D.Fla.1987) as authority for what it ascribes as the "general rule . . . that once a trustee has been discharged from office and the bankruptcy case is closed, the trustee does not have standing to reopen the bankruptcy." ABN's May 31, 2007 Brief, p. 9. However, ABN reads more into *Ayoub* than is warranted, for *Ayoub* involved a situation where the debtor, not the former trustee, was requesting that the case be reopened for purposes of further administering an asset. The court's supposed reference to the former trustee in fact was to the former trustee's "former attorney" and then only as an aside. Indeed, all that the *Ayoub* court said was that the attorney in question had no standing since there was no longer a trustee for him to represent.

B. *ABN's Standing*

■ ABN takes for granted its own right to now challenge the resurrection of this bankruptcy case. However, ABN is presumptuous, for ABN's after-the-fact challenge of the December 28, 2006 order does beg the question of whether that challenge should be given any weight. In other words, would ABN have been successful even if it actually had appeared at the March 8, 2007 hearing regarding Mr. Moyer's motion and argued its position then?[3]

I am not satisfied that ABN would have even been heard at that hearing. Granted, ABN was a creditor of Debtors as of the commencement of their case. However, both Debtors' schedules and the proof of claim filed by ABN indicate that the indebtedness owed by Debtors to ABN was fully secured by the mortgage granted in the Debtors' residence. Courts and practitioners often speak of fully secured creditors in a Chapter 7 proceeding as having secured claims with respect to the estate created by the commencement of that case. However, that is not an accurate characterization, for the bankruptcy estate is not comprised of property *per se*, but rather of only the debtor's interest in that property. 11 U.S.C. § 541(a)(1). For example, if a debtor owned an undivided tenancy in common in Blackacre at the outset of his case, only that undivided interest would become part of the debtor's bankruptcy estate. The other co-tenant's interest would remain outside of the estate.

The same logic applies with respect to liens, for they are no less a property right under applicable law. That is, if the debtor had instead owned Blackacre outright but had mortgaged it to A, only the debtor's interest in Blackacre would become property of the estate. A's separate mort-

---

**3.** Interestingly, *Ayoub*, which ABN has cited in support of its contention that Mr. Moyer lacked standing, involved a debtor's attempt to reopen a case because of a supposedly valuable jury verdict that the bankruptcy estate could collect. Like ABN in this instance, the defendant on that verdict opposed the motion. The court, though, concluded that the defendant had no standing in the matter. Considering the objection to the Motion to Reopen the estate by Kearney, it is evident that Kearney, the defendant in Circuit Court against whom the jury verdict was granted, has no standing to oppose the same. **While his opposition is quite understandable and it takes no great imagination to assume that he does not ever desire to pay this jury verdict to anyone, this is no basis for recognizing his standing to object to the Motion to Reopen the closed case.** *Ayoub*, 72 B.R. at 812 (emphasis added).

gage interest would remain outside of the estate.

 The notion that mortgages and other secured interests remain outside of the bankruptcy estate is confirmed by Section 726. That section establishes how property of the estate is to be distributed in a Chapter 7 proceeding. Noticeably absent from Section 726 is any reference to creditors of the debtor claiming a lien interest in property in which the bankruptcy estate also has an interest. In other words, Section 726 is directed only to creditors with unsecured claims. Indeed, that creditors holding liens fall outside the distribution scheme of Section 726 makes perfect sense. It would be absurd for the bankruptcy estate to use its share of an encumbered asset (*i.e.,* the asset's value less any liens) to payoff the very liens that are the reason for the estate's limited interest in that property.

[A] Chapter 7 trustee's duty is not to administer all of the assets in which the debtor has a legal or equitable interest for the benefit of all parties who may have an interest in these assets. Rather, the Chapter 7 trustee's duty is to reduce to money the legal or equitable interests owned by the debtor in these various assets so that the proceeds may be distributed to unsecured creditors in accordance with Section 726. A third party's interest or lien in the same asset does not constitute property of the estate and the Chapter 7 trustee has no duty to liquidate that interest other than when it is necessary to liquidate the estate's own interest in the property. As such, it is not accurate to characterize the Chapter 7 trustee's distribution of proceeds from the sale of an asset in which the estate claims an interest as payment on account of an allowed secured claim which the lien holder holds against the estate. Rather, the distribution represents nothing more than the Chapter 7 trustee's accounting to the lien holder for the share of the proceeds realized from the Chapter 7 trustee's sale of both the estate's interest in the subject asset and the lien holder's interest.

*In re Talbert,* 268 B.R. 811, 819 (Bankr. W.D.Mich.2001).[4]

If, as ABN concedes through the proof of claim it has filed, that the value of Debtors' residence exceeds the amount of the debt it is owed, one must question why consideration would have been given one way or the other to ABN's position even had it appeared on March 8, 2007 to oppose Mr. Moyer's motion to set aside the closure order. After all, the purpose of Mr. Moyer's motion was simply to enable him to proceed with a cause of action that would benefit a class of creditors to which ABN did not belong.

Moreover, ABN's motive is suspect. Common sense suggests that unsecured creditors with claims would want the case reopened so that the potential recovery

---

4. The Chapter 7 trustee's accounting for other property interests, including liens, may be made in connection with a Section 363 sale. This accounting may also be reflected in the Chapter 7 trustee's decision to abandon property pursuant to Section 554(a). In any event, Section 725 is quite clear that this accounting is to precede any distribution under Section 726 to the beneficiaries of the bankruptcy estate itself.

After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

11 U.S.C. § 725.

against ABN could be pursued.[5] Indeed, ABN itself concedes that its challenge to the prior decision to set aside the closure order is motivated by its desire to avoid having to otherwise defend against the preference action Mr. Moyer has now brought. Therefore, even if one were to accept ABN's argument that it has standing to now challenge the March 26, 2007 order setting aside the case's closure, there is considerable question as to what, if any, weight ABN's position should be given.

There is certainly nothing wrong with ABN opposing Mr. Moyer's effort to avoid its lien. In fact, ABN has already asserted as separate bases for dismissal its contentions that the applicable statute of limitations has run and that the avoidance action has been abandoned. What is inappropriate, though, is for ABN to use the prior reopening of this case, or more accurately, the setting aside of a prior order closing this case, as a pretext for derailing what would appear to be an opportunity for the bankruptcy estate to generate a Section 726 distribution for Debtors' unpaid unsecured creditors.[6]

## C. *Statute of Limitations*

■ Section 546(a)(1)(A) gives a trustee two years from the commencement of a bankruptcy proceeding to seek the avoidance of a preferential transfer under Section 547. ABN does not dispute that Mr. Moyer filed his complaint against it well within this deadline. However, ABN points out that this two-year limitation is subject to the further restriction that such

a complaint cannot be brought in any event if the case has been closed or dismissed. 11 U.S.C. § 546(a)(2).

■ ABN's position would be worth considering if in fact this case had been reopened pursuant to Section 350. The purpose of a statute of limitations is to protect parties against whom litigation may be brought. It establishes a time certain that, when passed, assures the concerned party that stale claims can no longer be maintained. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("Statutes of limitations ... represent a pervasive legislative judgment that ... the right to be free of stale claims in time comes to prevail over the right to prosecute them.") (internal quotation marks omitted); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 136, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) ("The statute of limitations is ... designed to protect the citizens from stale and vexatious claims....."). Closure or dismissal of a bankruptcy case obviously offers just such a date certain. Moreover, limiting the commencement of avoidance actions to the time period prior to the occurrence of either such event is not arbitrary, for it is fair to assume that a trustee acting with due deliberation would have commenced any avoidance action he thought was worth pursuing before he made the decision to close the case. Likewise, one would expect that a conscientious trustee would oppose the dismissal of any case if he thought that it was in the interests of the

---

**5.** The court's records indicate that there is at least one unsecured creditor who has filed a timely proof of claim in this case.

**6.** It is possible that the reopening of a bankruptcy case to pursue an avoidance action would not benefit unsecured creditors. After all, success is not guaranteed. Moreover, the administrative costs of pursuing the action

alone could absorb most, if not all, of the recovery. These concerns, though, could be addressed short of denying the reopening of the case altogether. In any event, the targeted defendant of the potential avoidance action itself is not the appropriate party to be articulating these concerns.

estate and its creditors to further investigate and pursue avoidance actions.

However, in this instance, Mr. Moyer has offered affidavits to the effect that his request for the closure of the case was a mistake. Specifically, those affidavits explain that Mr. Moyer had in fact instructed his assistant after the conclusion of Debtors' first meeting that the case should be docketed with the court as an "asset case" for further administration. Unfortunately, the case was inadvertently designated as a "no asset" case instead, thereby prompting the entry of the December 28, 2006 closure order.

According to ABN, there is not room within Section 546(a)(2) for even an honest mistake like this. However, such a position ignores Rule 9024. That rule, which adopts in pertinent part FED.R.CIV.P. 60(b)(1), states that:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . .

*Id.* (emphasis in original).

■ The relief that a court may grant under Rule 9024(b) and FED.R.CIV.P. 60 includes the vacation of the order itself. *U.S. v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). It follows then that if the order closing the bankruptcy case is vacated, then Section 546(a)(2) would no longer apply as a limit upon Mr. Moyer's pending avoidance action against ABN.[7]

There is no question that Congress, in enacting Section 350, intended it to be the means by which a case, once closed, could be reopened for future administration. It is, for the most part, ministerial.

> A motion to reopen is simply a mechanical device which can be brought ex parte and without notice. *In re Daniels*, 34 B.R. 782, 784 (9th Cir.BAP1983). It has no independent legal significance and determines nothing with respect to the merits of the case. *In re Germaine*, 152 B.R. 619, 624 (9th Cir. BAP 1993).

*In re Abbott*, 183 B.R. 198, 200 (9th Cir. BAP 1995).

However, Congress, in enacting Section 546(a)(2), also established that what is otherwise to be a liberal policy for reopening cases must be tempered to accommodate the competing need for certainty required by persons who might be the targets of stale avoidance actions by the estate. Consequently, while Section 350 permits a case to be reopened for virtually any good reason, the trustee is nevertheless barred by Section 546(a)(2) from commencing any avoidance action in the reopened case.

■ As for Rule 9024, it stands ready as a safety valve between Section 350 and Section 546(a)(2) to ensure that the balance otherwise struck is not unfairly applied. In other words. Rule 9024 provides the means for a trustee to still commence an avoidance action in a reopened case if, for example, that case had been previously closed because of mistake or inadvertence. Indeed, there is nothing

---

7. ABN argues that Section 350 should be the exclusive method for reopening a case once closed and that permitting parties the alternative of a Rule 9024(b) motion will inevitably lead to flagrant attempts to avoid the limitation imposed upon actions by Section 546(a)(2). However, ABN has offered nothing to support this contention. Moreover, Rule 9024(b) is not a free pass. For example, relief under subpart (1) is available only in instances where the movant is able to establish mistake, inadvertence, surprise or excusable neglect.

unique with Rule 9024 serving this function in this instance, for Rule 9024 provides similar protection against mistakes and other inadvertent conduct in the myriad of other situations when the entry of an order or judgment might otherwise cause an adverse result.[8]

■ ABN also contends that Mr. Moyer's mistake was not excusable even if Rule 9024 were to apply and that, therefore, relief from the December 28, 2006 closure order should not have been granted in any event. However, ABN does not contest either Mr. Moyer's or his assistant's affidavits that a mistake as ordinary as the selection of the wrong option on a computer screen may have precipitated the unintended closing. Rather, ABN relies upon *Grassmueck v. WFS Financial, Inc. (In re Cortez)*, 255 B.R. 324 (Bankr.D.Or. 2000). That reliance, though, is misplaced.

The court in *Cortez* did, in fact, conclude that Section 546(a)(2) barred the trustee from proceeding with an avoidance action in a case that had been previously closed notwithstanding the trustee's protestations that the closure had been prompted by his mistake. ABN is also correct that the alleged mistake in *Cortez* involved the trustee's filing of a no asset report as well. However, the comparison ends there, for *Cortez* makes clear that it was that particular trustee's regular practice to file no asset reports in cases assigned to him even though he had yet to decide whether po-

tential avoidable transfers should be pursued. The trustee would then use the interval after the report was filed but before the actual closure order was entered to further investigate the suspect transfers. If it appeared that a transfer was worth pursuing, the trustee would file an amended report so that the case would be left open. On the other hand, if the trustee's due diligence during the interval did not reveal anything promising, the trustee would simply allow the case to close in due course. *Id.* at 326. Apparently, the trustee had adopted this practice to expedite the closure of his cases.

Unfortunately, the trustee had overestimated the time it would take for the court to close that particular case. In fact, the *Cortez* court entered the closure order only 13 days after the trustee had filed his report instead of after the 60 days the trustee had become accustomed to expect. Consequently, the trustee found himself in the position where he would have liked to further pursue a promising avoidable transfer but where the unexpected case closure prevented him from amending his report as had been planned.

The court in *Cortez* did, as ABN states, find that the trustee had made a mistake in the sense that the trustee had filed a no asset report that he later regretted filing. However, the court concluded that the mistake was of the trustee's own making

---

8. Several courts have held that a case is not closed for purposes of Section 546(a)(2) until the case has been "fully administered" and that, therefore, a trustee may proceed with an avoidance action even when that action was not commenced until after the case had been closed and then reopened. *See, Gross v. Petty (In re Petty)*, 93 B.R. 208 (9th Cir. BAP 1988); *White v. Boston (In re White)*, 104 B.R. 951 (Bankr.S.D.Ind.1989); *Decker v. Voisenat (In re Serrato)*, 214 B.R. 219 (Bankr.N.D.Cal. 1997); *In re Stanke*, 41 B.R. 379 (Bankr.

W.D.Mo.1984). However, *Petty*, *White* and *Serrato* all involved instances where the premature closing of the case was due to inadequate disclosure of the transfer in question. It also appears that inadequate disclosure was involved in *Stanke*. Therefore, I question why these courts chose to create such a contrivance to afford the trustee relief from Section 546(a)(2). In each instance the court could have instead corrected the trustee's mistake in closing the case prematurely by simply setting aside the closure order under the clear authority of Fed.R.Bankr.P. 9024.

since it was the trustee who deliberately elected to enter the no asset report notwithstanding the fact that he had yet to complete his due diligence.

> The Trustee filed the original Inventory and No Asset Report according to its "not uncommon" practice. In these circumstances, the filing of the "no asset" report was not an inadvertent error.... The Trustee took the risk that the case would close and the limitations period in section 546(a)(2) would run prior to the Trustee verifying whether it had a lien avoidance claim against WFS or not, and the limitations period ran prior to the filing of an amended assets report and the Complaint in this adversary proceeding.

*Id.* at 329.[9]

Mr. Moyer, though, did not take the same calculated risk. Rather, it was Mr. Moyer's express intention to keep the case open so that he could continue pursuing the possible avoidance action against ABN. The case closed only because his assistant mistakenly filed a no asset report instead.

### D. *Abandonment*

■ ABN's final argument is that Mr. Moyer has failed to state a cause of action upon which relief can be granted because the closing of the case, regardless of how excusable, nonetheless resulted in the automatic abandonment of all property under Section 554(c).

> Unless the court orders otherwise, any properly scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and adminis-

tered for purposes of section 350 of this title.

11 U.S.C. § 554(c).

ABN contends that the resultant abandonment included the avoidance action that Mr. Moyer has now brought against it and, as such, the avoidance action can no longer be pursued in the revitalized case.

The flaw in ABN's reasoning is that the avoidance action was not property of the estate to begin with. Section 541(a) defines the universe of items constituting property of a particular bankruptcy estate. Prominent among those items are any and all interests in property owned by the debtor at the time he commenced his case. 11 U.S.C. § 541(a)(1). Other examples include rents or profits from property of the estate, 11 U.S.C. § 541(a)(6), and interests acquired by the bankruptcy estate itself. 11 U.S.C. § 541(a)(7).

■ However, notably absent from this universe is any avoidance action that the trustee might have or any anticipated recovery that the trustee might realize. Indeed, Section 541 is quite clear that it is only the property that is actually recovered or preserved as a consequence of a successful avoidance action that in fact becomes property of the estate. 11 U.S.C. §§ 541(a)(3) and (4). Nor should it be a surprise that potentially avoidable transfers fall outside of the estate's property given that a trustee's ability to avoid a lien under any of the pertinent bankruptcy sections is a power as opposed to an interest in property itself. "The avoiding powers are not 'property' but a statutorily created power to recover property." *In re Sweet-*

---

9. Put differently, the court was willing to accept the trustee's argument that, in hindsight, it was a mistake for him to have filed the no asset report. However, as the court noted, that the trustee had made a mistake was not enough, for relief is still only available under

Rule 9024 upon such terms as are just. The trustee's problem in *Cortez* was that he could not justify the relief that he was requesting since it was his own misplaced assumption that lead him to file the no asset report in the first place.

*water,* 55 B.R. 724, 731 (D.Utah 1985), *rev'd on other grounds,* 884 F.2d 1323 (10th Cir.1989).[10]

I am aware of two cases where the court has ruled that an avoidance action may not be maintained because it had been aban-doned by operation of Section 554. *See, Helms v. Arboleda (In re Arboleda),* 224 B.R. 640 (Bankr.N.D.Ill.1998) and *The Huntington National Bank v. Hunter (In re Hunter),* 76 B.R. 117 (Bankr.S.D.Ohio 1987). In each instance, the debtor had

**10.** In *National Labor Relations Board v. Martin Arsham Sewing Company,* 873 F.2d 884 (6th Cir.1989), the Sixth Circuit, in declining the NLRB's request to enforce an order, described a fraudulent conveyance action as "essentially an action to recover property that belongs to the debtor." *Id.* at 887. It then declared that:

> [P]roperty fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code.

*Id.*

The Sixth Circuit based its conclusion upon *In re MortgageAmerica Corp.,* 714 F.2d 1266 (5th Cir.1983). *MortgageAmerica* involved a creditor bank that had moved for relief from the automatic stay so that it could proceed with, among other things, a state law fraudulent conveyance action against the debtor's principal. The Fifth Circuit affirmed the lower court's denial of that request. It agreed with the Chapter 7 trustee that the property subject to the alleged transfers should be protected from individual creditors so that the bankruptcy estate could recover the same for the benefit of all creditors under the trustee's own avoidance powers. It further determined that Section 362(a)(3), which prohibits all acts against property of the estate, was the appropriate subsection to preserve the bankruptcy estate's rights based upon the theory that the subject transfers remained property of the estate because of their avoidable nature. *See also, In re Central Heating & Air Conditioning, Inc.,* 64 B.R. 733 (N.D.Ohio 1986); *In re Zwirn,* 362 B.R. 536, 539–40 (Bankr. S.D.Fla.2007).

I certainly agree with the sentiment in both *Arsham* and *MortgageAmerica* that the bankruptcy estate should not have to compete with individual creditors with respect to the recovery of property fraudulently conveyed by a debtor. However, I am not persuaded that Section 362(a)(3) offers the estate the desired protection. Granted, what constitutes "property of the estate" under Section 541(a)(1) is to be broadly construed. However, it is difficult to read Section 541(a)(1) so broadly as to include potential recoveries of fraudulent conveyances, especially in light of subparagraphs (a)(3) and (a)(4) of that same section. *See also, Sweetwater,* 55 B.R. at 730–31; *FDIC v. Hirsch (In re Colonial Realty Company),* 980 F.2d 125, 130–31 (2nd Cir.1992); *In re Saunders,* 101 B.R. 303, 305 (Bankr.N.D.Fla.1989).

Moreover, while the rationale adopted in *MortgageAmerica* solved the specific problem presented, that rationale raises a number of other problems when considered in a broader context. For example, if the fraudulent conveyance action and the transferred property are in fact property of the estate, then does the debtor succeed to this property by operation of Sections 1141(b), 1227(b)or 1327(b) whenever a Chapter 11, 12 or 13 plan is confirmed? Or, as another example, may a debtor claim as exempt property that has been fraudulently conveyed given that Section 522(b)(1) imposes no limitation upon what property of the estate a debtor may place in his "exemption basket" so long as it otherwise meets the criteria for the exemption claimed?

I further note that abandoning the reasoning of *MortgageAmerica* and *Arsham* does not mean that freelancing creditors may exploit potential fraudulent conveyances to the detriment of the bankruptcy estate. Rather, as the courts in *Colonial Realty* and *Saunders* both observed, the prohibition under Section 362(a)(1) against all creditor activities to recover claims against the debtor is sufficiently broad to encompass individual creditor actions against third parties to recover fraudulent conveyances.

However, it ultimately makes no difference whether the Sixth Circuit's conclusion in *Arsham* is correct or not because *MortgageAmerica,* upon which *Arsham* is based, clearly is limited to only transfers that are subject to avoidance as fraudulent conveyances. The transfer in this instance, though, is a potential preference under Section 547. Consequently, the question of whether property subject to avoidance as preferential transfers is property of the estate remains unaddressed.

disclosed to the trustee that a potentially avoidable transfer had taken place and the trustee otherwise should have been aware that these transfers presented an opportunity to make a recovery for the benefit of the bankruptcy estate. Nonetheless, the trustees had chosen to close the cases and, as a consequence, the "catch-all" abandonment of Section 554(c) had taken effect.

I certainly cannot find fault with either court's reasoning as far as it goes. However, in neither instance did the court consider the crucial question of whether the avoidance action was subject to the Section 554(c) abandonment in the first place. Rather, each court simply assumed that a trustee's authority to, for example, avoid a preferential transfer is property of the estate and, as such, was subject to abandonment in the same manner as would be equipment or accounts receivable. Therefore, I have given these cases no weight.[11]

ABN's argument would present a number of interesting issues had Mr. Moyer instead inadvertently closed the case without administering, for example, a piece of equipment that had become property of the estate upon the commencement of the case. Closure of the case, mistaken or not, would necessarily result in the abandonment of that property pursuant to Section 554(c). Rule 9024(b)(1), of course, might be available to set aside the abandonment order itself. However, there would still be the question as to how the subject property, once removed by the abandonment, could be transferred yet again into the bankruptcy estate. Some courts have relied upon the "[u]nless otherwise ordered by the court" language of Section 554(c) to characterize an abandonment under that section as being merely a technical one that can later be reversed in the event errantly abandoned property must later be returned to the estate for further administration. *See, e.g., In re Shelton,* 201 B.R. 147 (Bankr.E.D.Va.1996). It is also possible that Section 105(a) might be utilized in appropriate circumstances.

However, Mr. Moyer does not face that conundrum in this instance because his ability to avoid ABN's mortgage as a preferential transfer is simply a power granted to him by Section 547. He had that power immediately before the inadvertent closure of this case and he regained that power as soon as the closure order was set aside and he was reappointed as the estate's representative. Of course, his subsequent exercise of that power would have still been constrained by Section 546(a)(2) had the case been reopened under Section 350(b). However, for the reasons I have already given, the circumstances of this particular case warranted setting aside the prior closure altogether under Rule 9024. As such, Section 546(a)(2) does not preclude Mr. Moyer from proceeding with the cause of action against ABN.

### CONCLUSION

ABN's arguments raise a number of issues concerning the administration of a

---

**11.** Section 554(c) does refer to "property scheduled under section 521(1) of this title" whereas Section 554(a) refers to "property of the estate." However, I interpret the turn of phrase in Section 554(c) as simply another way of referring to the same property of the estate that is the subject of Section 554(a). After all, the property that Section 521 requires a debtor to schedule is nothing other than the debtor's own assets. Moreover, there appears to be good reason for the drafters of Section 554 to have described "property of the estate" differently in subsection (c), for the phrase chosen emphasizes that the automatic abandonment provided therein is to apply only to those unadministered items of property that had been disclosed. In contrast, property of the estate still unadministered at closure due to concealment will remain as the bankruptcy estate's property even after the case is closed.

bankruptcy case. However, ABN's standing to raise those arguments is dubious. As ABN itself concedes, its opposition to Mr. Moyer's efforts to remedy his mistake are selfish, for only ABN benefits if its administrative arguments are heeded.

Consequently, I have no compunction in recognizing Mr. Moyer's renewed right to commence this avoidance action against ABN. Mr. Moyer should not be barred outright from now attempting to recover property that could give rise to a significant distribution to the estate's creditors simply because Mr. Moyer mistakenly caused the prior closure of that case.

If ABN has any right to challenge the prior closure of this case, it is in the context of asserting its statute of limitations defense under Section 546(a)(2). However, for the reasons given, I conclude that the challenge does not have merit under the circumstances. Simply put, the December 28, 2006 closure order is a nullity given that it was subsequently set aside as having been entered in error. Therefore, for purposes of Section 546(a)(2), the estate has never in fact been closed.

Likewise, ABN's contention that Mr. Moyer's avoidance action was lost because of the Section 554(c) abandonment that accompanies all case closings has no bearing on Mr. Moyer's authority to seek the avoidance of ABN's mortgage as a preference. Mr. Moyer's ability to avoid ABN's mortgage was never property of the estate. Rather, it is simply a power afforded to him under the Bankruptcy Code and, as such, was never subject to the Section 554(c) abandonment.

Therefore, for the reasons stated, ABN's motion is DENIED. A separate order will be entered consistent with this opinion.